

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# WESTERN DIVISION

|  |  |  |
|---|---|---|
| **ADAM JONES** *and* **JOSHUA HASTINGS,** | ) ) ) ) | |
| *Plaintiffs,* | ) ) | |
| **v.** | ) ) | **Case Number:**_____ |
| **BUZZFEED, INC., BUZZFEED NEWS, BEN SMITH,** *and* **KATIE J.M. BAKER,** | ) ) ) ) | **JURY TRIAL REQUESTED** |
| *Defendants.* | ) ) ) | |

---

## COMPLAINT

---

***COME NOW*** the Plaintiffs Adam Jones ("Jones") and Joshua Hastings ("Hastings") (collectively "Plaintiffs" or "Investigators") and complain against Defendants BuzzFeed, Inc. ("BuzzFeed"), BuzzFeed News, a division of BuzzFeed, Inc., its Editor in Chief, Ben Smith ("Smith"), and its Senior National Investigative Reporter, Katie J.M. Baker ("Ms. Baker) (collectively "BuzzFeed Defendants") regarding a libelous BuzzFeed News Article written, published and distributed by the Defendants beginning on June 22, 2017. The investigative articles focus on the suicide death of a University of Alabama student who claimed a wealthy Tuscaloosa

man sexually assaulted her and the related police investigation of her claims. In support of this Complaint the Plaintiffs state the following:

## JURISDICTIONS *and* VENUE

1.      Under 28 U.S.C. § 1332(a)(1), this Court has jurisdiction over Plaintiffs' claims where the parties are citizens of different states, and the amount in controversy exceeds *Seventy-Five Thousand Dollars* ($75,000).   Plaintiffs' claims for defamation libel arising under the laws of the State of Alabama are properly before this Court under its diversity and supplemental jurisdiction under 28 U.S.C.§1367.

2.      Under 28 U.S.C. § 1391(b)(2), the venue is proper in this United States District Court because both Plaintiffs, Adam Jones, and Joshua Hastings, reside and work in Tuscaloosa County, Alabama, were injured in this Federal Judicial District in Tuscaloosa County. The defamatory statements were written, published, and distributed through the BuzzFeed Defendants News Website. The alleged "Investigative News Report" was distributed purposefully to a worldwide audience through the internet and its various distribution constituents. Defendant BuzzFeed's Senior Investigative Reporter, Defendant Katie J.M. Baker, wrote the defamatory article and admittedly reported from Tuscaloosa, Alabama.[1] The Plaintiff investigators were targeted in the article, were defamed therein and were wrongfully

---

[1] *The complete article is attached as Exhibit 1 to this Complaint.*

subjected to infamy and ridicule in their local community and state and, in fact, around the world due to the Article's libelous falsehoods about them. The subject of the article was an alleged sexual assault event which took place in Tuscaloosa County. Accordingly, both jurisdiction and venue in the United States District Court for the Northern District of Alabama, Western Division is proper, and Plaintiffs, Jones, and Hastings chose this forum.

3.      This Court has specific personal jurisdiction over Defendants under Alabama's long-arm statute, as well as under the Due Process Clause of the U.S. Constitution, because, among other things, the causes of action asserted in this Complaint arise from Defendants transacting business in Alabama and causing tortious injury by acts or omissions in Alabama and particularly in Tuscaloosa County, Alabama. Moreover, exercising jurisdiction here would not offend traditional notions of fair play and substantial justice because Defendants could and should have foreseen being sued in an Alabama federal or state court to account for their defamatory statements targeting police officers who are citizens and residents of Tuscaloosa County, Alabama.

4.      The BuzzFeed Defendants knew that both plaintiffs, Jones and Hastings, were residents of Alabama and that their purposeful act of writing and publishing an article falsely and maliciously critical of the Plaintiff officers, the University of Alabama, DCH Regional Medical Center, the county District

Attorney, and the Sheriff's Department, manifests BuzzFeed's' intent to aim their defamatory publication into Alabama, at an Alabama audience in regard to Alabama citizens.

5.     BuzzFeed also regularly solicits business in Alabama and derives substantial revenue from advertising resulting from directing news and other publications, including the articles at issue in this action, into Alabama and to the residents of Alabama.

6.     BuzzFeed's Investigative Reporter, Ms. Baker, conducted multiple interviews in and directed myriad communications via phone and email into Tuscaloosa, Alabama as part of her prepublication "investigative" work in authoring the news article that is the subject of the suit. For example, the article reveals Ms. Baker had direct communication with numerous individuals in Tuscaloosa County, including employees of the Sherriff's Department and other involved individuals and entities. There were many e-mails to and from the Captain of the multi-agency, County Homicide Division and the direct supervisor of Investigator Plaintiffs, Jones, and Hastings.

7.     Accordingly, the venue is proper in this Court, and this Court has jurisdiction here because the case and associated activity and damages arose and occurred in this District. The Plaintiffs reside in Tuscaloosa, Alabama and the Defendants are citizens of and domiciled in other states such that complete diversity

exists. The damages, as shown herein, to each Plaintiff far exceed the jurisdictional amount, seventy-five thousand dollars ($75,000.00).

8.     Plaintiff Adam Jones is a United States Citizen and an adult resident of Tuscaloosa County, Alabama. Jones is an Officer and Investigator for the City of Tuscaloosa assigned to "Tuscaloosa Metro Homicide Unit," a multi-agency task force investigating violent crimes, including sex offenses in Tuscaloosa County, Alabama.

9.     Plaintiff Joshua Hastings is a United States Citizen and an adult resident of Tuscaloosa County, Alabama. Hastings is a Deputy Sheriff and was an Investigator for the Tuscaloosa County Sheriff's Department who was also assigned to the "Tuscaloosa Metro Homicide Unit," during the investigation that is the subject of this suit.

10.     Defendant BuzzFeed Inc. is a Delaware corporation publishing content, including the article relevant to this suit, through its division called BuzzFeed News, directed at and into Tuscaloosa County, Alabama. BuzzFeed owns and operates a global cross-platform network including the BuzzFeed.com website, mobile apps, and easily accessible content through many digital platforms. At all times relevant hereto BuzzFeed was and is publishing content in Tuscaloosa County, Alabama and the surrounding area and the articles it published defaming the Plaintiffs were allegedly investigated in, reported from, distributed to, and

targeted Tuscaloosa local citizens and The University of Alabama and particularly other individuals and entities in this county and state.

11.     Defendant Ben Smith is an adult individual who, on information and belief, resides in the state of New York. Smith is the Editor in Chief of BuzzFeed News. Mr. Smith supervises BuzzFeed's reporters. Mr. Smith directly oversaw and controlled the publication and content of the Articles involved here, as well as the investigative reporter, Ms. Baker. Baker, BuzzFeed's Senior Investigative Reporter, wrote the initial defamatory article about the plaintiffs and assisted regarding the second article.

12.     Defendant Katie J.M. Baker is an individual who, on information and belief, resides in New York, New York but who is now assigned to London by BuzzFeed. Baker is BuzzFeed's Senior National Investigative Reporter. Baker, reporting from Tuscaloosa, Alabama, wrote the first defamatory article which BuzzFeed News published on June 22nd, 2017. *(Attached hereto and incorporated herein as Exhibit 1)*. Baker also assisted with a follow-up article that BuzzFeed published regarding the filing of a lawsuit by the parents of the Alabama co-ed on July 3, 2017, regarding her death which also libeled Plaintiffs Hastings and Jones. *(Attached hereto and incorporated herein as Exhibit 2)*.

## FACTS

13.     On June 22, 2017, Defendants, BuzzFeed, through its division, "BuzzFeed News," Smith, and Ms. Baker published BuzzFeed's initial false, slanted, and libelous article regarding Investigators Jones' and Hastings' investigation of the alleged sexual assault of Megan Rondini. The article also discusses the tragic suicide death of Ms. Megan Rondini, a 20-year-old former University of Alabama student from Austin, Texas and claims that her death resulted, in part, because the Plaintiff officers failed to do their job in investigating the Rondini case.

14.     The article was headlined, subtitled, and captioned as follows:

> **"A College Student Accused a Powerful Man of Rape. Then She Became a Suspect"** and **"How Accusing a Powerful Man of Rape Drove a College Student to Suicide." "When an Alabama College Student Told Police She Was Sexually Assaulted, She Did Everything She Thought She Was Supposed to Do. She Ended Up Killing Herself."**

These headlines indicate that the purpose of the news article is to report the facts as to how and why Ms. Rondini's sexual assault accusation ended in her suicide.

15.     The BuzzFeed article reports that the Plaintiffs, Tuscaloosa County Homicide Investigators, Josh Hastings, and Adam Jones, through their investigation

intentionally covered up a powerful Tuscaloosa man's rape of Ms. Rondini. The article depicts both Hastings and Jones as corrupt law enforcement officers whose sub-standard and illegal investigative conduct eventually played a significant role in Ms. Rondini committing suicide. These allegations were contrived, baseless, and false. Defendants, Baker, Smith, and BuzzFeed knew the libelous and malicious content, implications, and insinuations about Hastings and Jones were false. Nevertheless, the Defendants published the libelous material with the motive of furthering the Defendants' goal and agenda to sensationalize the alleged elite college campus "rape culture" scenario that had long been BuzzFeed/Baker's target topic.

16.    On July 3rd, 2017, the BuzzFeed Defendants published a second false and libelous article entitled **"The Parents of a College Student Who Killed Herself After Reporting She Was Raped Have Filed A Wrongful Death Suit."**[2] This article confirmed and repeated BuzzFeed's first article's untrue narrative that Investigators Hastings and Jones incompetently and corruptly investigated Ms. Rondini's rape allegations and wrongfully treated Rondini as a criminal suspect, with derision, and without cause, to induce her not to prosecute her alleged rapist. BuzzFeed was admittedly in possession and aware of factual information showing the reported facts about the Plaintiffs were most likely false.

---

[2] ***See Exhibit 2 attached hereto and incorporated herein***

17.     Jones and Hastings acted during the investigation of the Rondini/Bunn situation as honorable law enforcement officers who diligently and competently investigated the case with absolute honesty and integrity. Jones and Hastings investigated and discovered the actual facts as was their duty and acted appropriately. The BuzzFeed Defendants knew this long before writing and publishing the subject articles. The articles nevertheless falsely and maliciously alleged that Bunn's family's political power, wealth and status in Tuscaloosa influenced the Plaintiffs' investigation so Mr. Bunn would not face any charges for the suspected rape. Furthermore, the article falsely and maliciously claims that Ms. Rondini's subsequent suicide in Texas 7 months later was caused, in part, when the Plaintiff officers' purposefully misconducted the investigation to help Bunn and thereby incompetently performing their job.

18.     The articles are specifically and comprehensively libelous of the Plaintiffs. The Defendants, purposely, recklessly, and with knowledge of the articles' false statements and implications, or in reckless disregard of the truth, libeled the Plaintiffs maliciously and with intent to destroy their reputation and good name and to hold them up to ridicule and hatred in their community and state, and in fact, nationally and worldwide.

19.     Defendants were aware of and had access to investigative materials such that they did know or should have known the articles they published contained

accusations and statements about and against the Plaintiff Investigators Jones and Hastings that were false and defamatory. The Defendants acted purposely with motive simply ignoring and ran from the truth in publishing worldwide the libelous material about Jones and Hastings and in attacking others in the Tuscaloosa/University of Alabama community.

20.     Moreover, Defendants purposely, consistently, with motive and agenda omitted critical facts they were privy to before publishing the articles such that they knew they were not publishing the truth about the Plaintiff officers or their investigation.

21.     BuzzFeed's articles report that the Plaintiffs, working as Investigators for the Tuscaloosa County, Homicide Unit, illegally and deliberately conducted Rondini/Bunn's alleged sexual assault investigation in a manner to protect the alleged rapist, T.J. Bunn, Jr., because Bunn was from a powerful, wealthy and influential family. The article claims the University of Alabama did not support Rondini as it should have also deference to Bunn and his family.[3]

22.     Defendants purposely, with actual malice, published these false articles on their worldwide "news" website offering the opportunity to others to repeat the publication with multiple "share," "comment" and "like" options on social media sites like Facebook, Twitter, etc.

---

[3] *See Exhibits 1 and 2 attached hereto and incorporated herein*

23.    The Defendants encouraged the natural and probable consequence that other media outlets and social media connections would share/distribute these libelous articles. BuzzFeed's ultimate motive and goal was for the insidious articles to go "viral" spreading far beyond BuzzFeed's news website. The libelous articles' repetition to the public worldwide caused hatred and vitriol aimed at Investigators Hastings and Jones in the city, state, and country where they reside and work and beyond.

24.    On September 24, 2018, Plaintiffs' counsel sent a retraction demand *(attached hereto and incorporated herein as Exhibit 3)* to the Defendants asking that BuzzFeed retract and publish the truth.

25.    On October 11, 2018, BuzzFeed's counsel responded by letter *(attached hereto and incorporated herein as Exhibit 4)* refusing the request to retract.

26.    BuzzFeed published the initial article [4] on June 22, 2017, showing Defendant Ms. Baker to be the author. Baker, at all times pertinent here, was employed by BuzzFeed Inc., worked for Smith who was BuzzFeed's editor and Baker's supervisor. These Defendants were acting on behalf of and for BuzzFeed Inc. in its news division and were doing so within their authority and according to their jobs with the company.

---

[4] *See Exhibit 1 attached hereto and incorporated herein*

27.    The incident leading to Ms. Rondini's assault allegations against T.J. Bunn, Jr. occurred during the night of July 1, 2015, and into the early morning hours of July 2, 2015. Thus, BuzzFeed published "news articles" regarding the events it claims led to Ms. Rondini's death approximately two years after her situation began and long after it was investigated and closed by law enforcement, Jones and Hastings, and criminal prosecution entities, including the District Attorney and a Grand Jury. Thus, BuzzFeed admittedly had and/or had access to the investigative files and materials involving the Rondini/Bunn sexual assault situation and the subsequent investigation by the Plaintiff officers.

28.    Ms. Rondini, tragically, took her own life alone in Dallas, Texas in February of 2016, more than sixteen (16) months before BuzzFeed published its initial article claiming to be an "investigative report" of the circumstances leading to Ms. Rondini's suicide.

29.    Ample time existed within which BuzzFeed, its reporter and editor should/could have and/or did discover the true facts. The Defendants could have reported accurately and fairly regarding the subject events. Nevertheless, the Defendants had, knew of, but ignored the facts, distorted those facts and intentionally published malicious falsehoods about the Plaintiff investigators and their investigation of the allegations Ms. Rondini made regarding the alleged assault by Mr. Bunn in July of 2015.

30.    BuzzFeed, Mr. Smith, and Ms. Baker, published false, distorted and libelous material in the BuzzFeed news articles with knowledge of or in reckless disregard of the falsity of said statements and implications about Jones and Hastings. The Defendants purposely, with malice toward the Investigators Hastings and Jones, published libelous, defamatory material discussed below.

31. The first article's heading/captions are,

> **"A College Student Accused a Powerful Man of Rape. Then She Became a Suspect"** and **"How Accusing a Powerful Man of Rape Drove a College Student to Suicide."**

These headlines purposely led readers to believe, when read in context with the article, that Investigators Jones and Hastings, were involved in a departmental conspiracy to protect the accused rapist because he and his family were powerful and popular. The BuzzFeed claim was that Jones' and Hastings' misconduct in failing to do their investigative jobs properly, let Rondini's rapist avoid prosecution and caused Megan Rondini's suicide.

32.    Baker writes in the first article, "***Megan never imagined that she would soon be cast as a criminal, or that investigators would view Sweet T- really T.J. Bunn, Jr., son of an influential Tuscaloosa family – as the true victim. But that's exactly what happened.***" [5] The claims in the quoted language are false and

---

[5] *See Exhibit 1, attached hereto and incorporated herein.*

contrary to facts that BuzzFeed knew. Jones and Hastings did not "cast" Megan Rondini as a criminal. They certainly did not view Bunn as the "true victim" and describing the false assertions as "exactly what happened" is far from true given the facts that the BuzzFeed reporter knew.

33.     Baker goes on to say, ***"Under Alabama's archaic rape law, victims must prove they "earnestly" resisted their attackers, and the investigator who interviewed Megan quickly decided she hadn't fought back against Bunn — she hadn't "kicked him or hit him," he explained. His investigation would conclude that no rape occurred. But he didn't stop there. Instead, he started building a case against Megan, questioning her for multiple crimes she wasn't even aware she had committed. Later, when Megan tried to file a civil suit, she learned <u>the only way to escape possible prosecution for those crimes was to drop her case.</u>"***

34.     The quoted parts of the article are false. The Defendants maliciously published these statements to cause the public to believe the investigators made up false charges to force Ms. Rondini not to pursue criminal charges against Bunn and to forego a civil lawsuit against Bunn.

35.     Defendants published the false statements about Jones and Hastings to assert and lead the public to believe that the investigators "built" a case against Ms. Rondini as a ploy to influence her to drop her rape allegations against Bunn.

36.     In fact, during the alleged assault investigation, Ms. Rondini belatedly volunteered/admitted that she had taken Mr. Bunn's keys from his room while he was asleep. Then entered Bunn's car. Rondini admittedly found Bunn's pistol. She then "accidentally" fired the pistol toward Bunn's house while in the driver's seat. She took the pistol from Bunn's car and money from his wallet. She told Plaintiffs Hastings and Jones much later that morning that she had left the gun on the ground, by the road in Bunn's neighborhood. She did not disclose any of this in her first two interviews with police. Rondini admitted to multiple crimes without the need for any "building of a case" by Jones and Hastings. BuzzFeed and Ms. Baker knew these facts before the defamatory assertions and corruption insinuations were made to indicate that the Plaintiff investigators were acting contrary to their duties as law enforcement officers, were doing so to hurt the crime victim (Rondini) and to help the criminal (Bunn) get away with rape.

37.     The Article states, ***"Studies show that trauma victims often have fragmented memories of assaults. When confronted with such gaps, police should consider the possibility of drug-facilitated sexual assault, the International Association of Chiefs of Police guidelines explain. But investigators never tested Megan's blood or urine, according to the state department that processes toxicology reports, which found no records associated with Megan's case."***

38.    Defendants maliciously wrote and published this false statement to convince the public the Plaintiff investigators improperly and/or intentionally failed in their duty to test Rondini's blood and/or urine when their job was to do so. The BuzzFeed Defendants knew that the hospital, consulting with its patient, Ms. Rondini, as part of the "rape" kit protocol, would draw blood and/or urine as indicated and order the testing of same in such circumstances. BuzzFeed also knew that Ms. Rondini admitted/declared that she had not been drugged, and further that Ms. Rondini told Jones and Hastings, as well as her father, that there was no time when Mr. Bunn could have given her a drug. The Defendants knew the hospital took and tested Rondini's urine.

39.    The Article continues discussing the situation regarding Bunn's firearm, wallet and money, as follows: *"Around 2 p.m., about 12 hours after Megan had first reported the incident, Jones told her they were "close" on her case but had some other issues to discuss."*

*"Before I ask you any questions, you got any reasoning behind why you did what you did?" he asked Megan.*

*"What do you mean?" Megan said.*

*"I just need you to tell me, once we get into the questioning, what your reasoning was about why you did these things," he said.*

*Megan stared at Jones as he read her Miranda rights before asking her why she took Bunn's gun. He didn't tell Megan that, although she had entered the room an alleged victim, she was now a suspect as well."*

40.     BuzzFeed published these statements to mislead the public to conclude the Plaintiff officers invented a case against Ms. Rondini and hid from her that she was a suspect to induce Rondini to forego her assault allegations against Mr. Bunn so Bunn could get away with raping Rondini. These statements and implications are false but were written as fact. BuzzFeed and Baker intended for their readership to believe the article.

41.     The BuzzFeed Defendants falsely claim that Jones and Hastings, in a conspiracy with others, invented a criminal case against Ms. Rondini to blackmail her regarding pursuing Bunn. BuzzFeed's purpose was to intentionally lead readers to believe that there was no criminal conduct by Rondini.

42.     Investigator Jones began questioning Ms. Rondini about the gun and money only after Ms. Rondini belatedly volunteered that she had taken Bunn's keys, entered Bunn's car and after that took the firearm from Bunn's car.

43.     Ms. Rondini admittedly discharged the firearm and then disposed of the loaded gun and the other things taken from Bunn's car on the grass by the road in Bunn's residential neighborhood. Indeed, a dangerous situation that investigators

had to immediately address. Jones interrupted the interview to see about the missing loaded firearm.

44.     Further, Investigator Jones gave Ms. Rondini every opportunity to consider and explain her reasons for taking Bunn's money and his gun and advised her of her right to remain silent before any further questioning about Rondini's admissions. There was no intent or any attempt to hide from Ms. Rondini that her admitted criminal conduct had necessarily become a subject matter of the interview at that point. The BuzzFeed Defendants' article vilifies Jones and Hastings based on the above quoted intentionally false reporting of fact to convince its readers that the investigator Plaintiffs willfully and wrongfully mislead Ms. Rondini in trying to help Bunn. In this regard, the article is defamatory and malicious and purposefully caused the officers to be vilified and scorned by the public.

45.     The Article continues: ***"Eventually, Jones returned to Megan's rape allegations. "Based on your statements to me, you said that you never resisted him," he said.***

***"I did resist him," Megan said, listing the ways she did, from repeatedly telling Bunn she wanted to leave to turning away when he kissed her. "I wanted to go home," she said. "He didn't take me home."***

***"Look at it from my side. You never kicked him or hit him or tried to resist him."***

*A few minutes later, Megan said she didn't know if she wanted to press charges after all.*

*"I want to be done," she said. "I just want to move on."*

*Jones offered to give her a "refusal to prosecute" form to sign."*

The article continues:

*More than 40% of people who reported sexual assault in Tuscaloosa from 2011 to 2016 officially dropped their charges by signing such forms, according to a BuzzFeed News analysis of the homicide department's data. There are many reasons why someone might not want to pursue a case, Hood said: "I know for instance in many cases people are mad at someone initially, then change their mind." But the IACP tells police not to pressure victims to make any decisions about prosecution during the initial stages of an investigation. Doing so is "poor practice" and "potentially damaging to an agency," its guidelines state.*

46.    In this part of the article, Defendants falsely claim that the Plaintiff investigators wrongfully "pressured" Ms. Rondini to the detriment of their department to get her to drop the criminal prosecution of Mr. Bunn. This is in accord with the BuzzFeed Defendants' article's earlier defamatory assertions regarding the creation of a criminal case against Rondini. The full videotaped interview of Ms. Rondini, that Buzzfeed intentionally and maliciously omitted from their article, makes clear that Investigator Jones tried to elicit from Rondini a definitive

statement that could meet the legal standards to support a sexual offense criminal charge against Bunn under Alabama law. Jones was simply not able to do so. The facts available at that time strongly indicated that a rape charge under the circumstances given Rondini's rendition of the facts was improbable. The BuzzFeed Defendants knew this, they had these facts and more before publication, but ignored those known facts to slander the Plaintiff officers and others. [6]

47.   Defendants intentionally, yet consistent with BuzzFeed's goals and agenda, distorted and omitted facts Baker knew to accomplish BuzzFeed's purpose of creating an internet sensation by maliciously vilifying these officer Plaintiffs and the system under which they worked. The BuzzFeed Defendants, including Smith and Baker, ignored the video of Ms. Rondini entering and then leaving her apartment with Mr. Bunn and Mr. Barksdale recorded on July 1st and July 2nd of 2015 at Rondini's apartment complex. Rondini was not "blacked out" nor did she show any sign of being unstable or drugged on the tape. This video and other clear evidence discovered by Jones and Hastings directly contradict multiple statements made by Ms. Rondini in her interviews with Plaintiffs including that she did not recall Bunn and Barksdale taking Rondini directly to her apartment after picking her up walking home alone on University Blvd. late at night.

---

[6] See motive/malice allegations below.

48.     Defendants knew, intentionally ignored and selectively omitted Ms. Rondini's July 1st and July 2nd, 2015, late night/early morning text messages between her and her friends. That text conversation explicitly demonstrated that Ms. Rondini intended to leave her apartment to voluntarily go home with Mr. Bunn. Defendants' article failed to address critical portions of Ms. Rondini's text messages so BuzzFeed's slanderous and malicious article assertions would not lose all public credibility regarding BuzzFeed's libelous criticism of Jones' and Hasting's investigation of the Bunn/Rondini situation.

49.     Defendants falsely assert that Plaintiffs engaged in misconduct when classifying the Rondini situation as a "special inquiry" rather than as a sexual assault or rape in their paperwork. BuzzFeed knew the "special inquiry" designation classifies reported incidents that do not initially meet the elements of a given crime. The situation presents the need for more facts, evidence, and further investigation to get to the level legally necessary to charge an individual with a crime under the law.

50.     The BuzzFeed publications consistently "cherry picked" and intentionally omitted evidence which they knew led Jones and Hastings to conclude that there was no "probable cause" present such that Bunn could be charged with rape or another sexual offense under the Alabama law. Any competent and honest

criminal investigator would have reached the same result. So would any competent and honest investigative reporter, editor and news publication. [7]

51.     Baker, Smith, and BuzzFeed ignored and omitted some of the evidence as follows:

- Ms. Rondini telling Investigator Jones that she never feared for her life during the incident.

- Ms. Rondini telling Investigator Jones that she did not try to fight or resist Bunn to the level required under Alabama law.

- Ms. Rondini telling Investigator Jones that she let Bunn have sex with her because he was an influential person in Tuscaloosa.

- Ms. Rondini's text messages to friends showing she planned to spend the night at Bunn's house and that she expected to and was excited about having sex with Bunn.

- That Ms. Rondini was not fearful of Bunn.

- The fact that texts were written/sent while Ms. Rondini was on the way to Bunn's house during her alleged memory lapsed "blackout" period.

---

[7] Compare the libelous articles discussed herein with the reporting of Stephanie Taylor and the Tuscaloosa News, ***Files Detail Investigation Into Megan Rondini Case***, http://gatehousenews.com/investigativefiles/

- That Ms. Rondini never told Bunn "no," "don't" or "stop."

52.   BuzzFeed's article also omits two pages of handwritten notes Ms. Rondini composed at her father's request, before her second interview with Investigator officers on the morning of July 2, 2015.

53.   Ms. Rondini clearly states that she let Bunn have sex with her. Also omitted were the video/audio portions of the interviews of Ms. Rondini saying, "when we had sex" and "we had sex." Ms. Rondini does not claim that she ever said "no," "leave me alone," or even "stop." No statement Ms. Rondini gave to the investigators states that Bunn raped or sexually assaulted her.

54.   Ms. Rondini failed to resist at all, much less to the level required by Alabama law as evidenced by her recorded testimony.

55.   Ms. Rondini never presented to the Plaintiffs facts to support a rape charge in Alabama. Further, the evidence is entirely clear that before and during the trip to Bunn's house from her apartment, Ms. Rondini anticipated and intended to have consensual sex with Mr. Bunn. Baker, Smith, and BuzzFeed knew this.

56.   The BuzzFeed reporter, Ms. Baker, knew of these text messages, knew these texts were contrary to what she wanted/intended to portray in her article. The articles intentionally failed to report these facts while libelously reporting that these officers, Jones and Hastings, failed to do their duty and that their failure contributed

to the suicide death of Ms. Rondini. The BuzzFeed Defendants' conduct here was at worst purposeful/intentional and at best, reckless.

57.   Defendants' articles imply there was corrupt and collusive conduct when Investigator Jones "abruptly" left the interview room right after Ms. Rondini explicitly admitted that she left a stolen/loaded pistol from Bunn's car on the ground in the open in Bunn's neighborhood. The gun was accessible to neighborhood children and others for several hours before the officers recovered it.

58.   Defendants did not report the fact that neither Plaintiff was responsible for drawing blood or taking a urine sample from Ms. Rondini nor for ensuring forensic testing where the hospital performed a basic rape kit. Additionally, in the interview between Plaintiff Jones and Ms. Rondini, Rondini did not claim or indicate a belief that any drug was involved. There was no evidence to suggest that drugs were involved and no credible evidence to support a memory fault. Ms. Rondini asserted there was no opportunity for her to have been "drugged."   In Bunn's interviews, he expressly admitted to having consensual sex with Ms. Rondini.

59.   The BuzzFeed Defendants intentionally failed to report a text message between Ms. Rondini and her father where he asked her whether the nurse had taken a blood sample to document if he (Bunn) had drugged her. Ms. Rondini replied to her father, "I don't think I was drugged because my drink never left my friends."

But the BuzzFeed article persisted in slandering the integrity and reputations of Investigators Jones and Hastings claiming falsely and without evidence that the Plaintiff officers' investigation by not taking and testing blood and urine was inferior and collusive with an intent to let a rich rapist get by with a presumed crime.

60.     Defendants' articles intentionally omitted many facts that show these investigators conducted a thorough and fair investigation without any interference or outside influence by anyone, rich or poor.

61.     This evidence was inconsistent with a drug-induced date rape, a rape period, or any illegal, sexual misconduct. Nevertheless, the BuzzFeed articles assumed "rape" occurred and that the failure to charge and Ms. Rondini's death was these officers' fault because they failed to do their duty during the investigation.

62.     BuzzFeed either knew its claims about Jones and Hastings were not true or BuzzFeed had severe doubts about the truth given the evidence they had in their possession.

63.     The Defendants' articles intentionally failed to point out many inconsistencies in Ms. Rondini's story and reported the officers erred when they considered the direct inconsistencies including Ms. Rondini's admission of intent and consent to sex with Bunn.

64.     Defendants published the subject libelous articles to its alleged 650-million-person audience intentionally offering comment and additional "share"

opportunities to encourage readers to report and repost on their national social media sites. Due to the articles' subject matter and focus many Alabama, and Tuscaloosa County citizens became aware of, read, discussed, repeated, and were impacted by the articles and BuzzFeed solicited comments to it. Over 2,240,000 readers accessed the initial article within the first month after it was published worldwide.

65.    Defendants published to the public the above discussed false and defamatory statements and implications of professional misconduct about Plaintiffs on their website knowing that the libelous material was not true and, in an effort, to damage the Plaintiff officers, their department, the University of Alabama and the State of Alabama in the eyes of the public, locally and nationally. The purpose and motive behind BuzzFeed's vitriolic and factually false reporting were to underscore and emphasize BuzzFeed's agenda/belief that rape laws in Alabama and most other states sheltered male rapists, especially "rich" ones and that countless rapists, especially affluent ones get away with the crime. They also believe that elite universities are safe havens for rapists and that a "rape culture" exists in and around elite University campuses, including, the University of Alabama.

## ACTUAL MALICE

66.     The facts show it is "plausible," actually it is probable, that Ms. Baker, Smith, and BuzzFeed News acted with "actual malice" in publishing the Rondini Article on June 22, 2017, and the follow up on July 3, 2017.

67.     Baker wrote and BuzzFeed News and the editor, Ben Smith, published defamatory factual material about the Plaintiff officers while knowing that many of the article's factual assertions and implications were false.

68.     BuzzFeed, Baker, and Smith, acted with reckless disregard of truth or falsity in publishing factual untruths and false implications regarding Jones and Hastings given what they knew about the Rondini/Bunn situation.

69.     Defendants published the defamatory material about the Plaintiffs while subjectively having serious doubts about the truth of the published defamatory material about the Plaintiffs and their investigation.

70.     BuzzFeed's news publication goals are based on "sensational presentation" in search of "viral" success on the internet. Truth and accuracy in these libelous articles took a backseat to their goal of "viral" success.

71.     BuzzFeed News websites, the history regarding topics, and published articles demonstrate that stories about alleged rapes, unreported rapes, campus rapes, failure to charge and prosecute rape cases, and the "rich and powerful" and their advantages in allegedly corrupt systems are among BuzzFeed's and Baker's

favorite topics. These topics and the "crimes" involved top the list of lead BuzzFeed "news" article subjects. Defendants believe these "rape culture" stories will help them achieve the much sought after "viral" content and internet news success.

72.    Katie J.M. Baker began working for BuzzFeed on April 1, 2014. She was hired specifically to cover criminal justice, legal and social issues related to college campuses. Baker was to work closely with Jess Testa who heads BuzzFeed's "rape culture coverage." [8]

73.    Some of BuzzFeed's and/or Baker's illustrative headline articles published before and after the Rondini/Bunn article are: [9]

- "Overly Aggressive" Prosecution of Vulnerable Women for False Rape Claims Could Deter Victims From Reporting Assaults, MPs Have Warned."

- "Hundreds of Women In UK Have Been Prosecuted For Lying About Rape"

- "Maryland Victims No Longer Need to Prove They Physically Fought Their Rapist"

---

[8] See **_Katie J.M. Baker is Going to BuzzFeed,_**  https://observer.com/2014/02/katie-j-m-baker-is-going-to-buzzfeed/
[9] See **_Katie J.M. Baker, Articles Page on BuzzFeed_**
https://www.buzzfeed.com/katiejmbaker?language=all

- "Maryland Lawmaker Seeks Change To Rape Law After BuzzFeed News Report"

- "Stanford Sex Assault Judge Went Easy On Another Student Athlete"

- "Elite Private School Accused Of Shielding Sex Abuse"

- "Sent Home From School After Reporting A Rape"

74.     When the Defendants discovered the story of the young University of Alabama coed, Megan Rondini, following her tragic suicide, Baker, Smith, and BuzzFeed quickly concluded a sensational story would progress their agenda driven "rape culture" reporting. Defendants could write, publish, and distribute an incredibly vivid, extreme, and graphic "investigative article" about a rich older man getting away with raping an innocent, 20-year-old University of Alabama student. Ms. Rondini committed suicide after the University allegedly ignored her and local police bullied and ignored her was internet gold in BuzzFeed's eyes. The Defendants believed this narrative was too good for them to pass up. Not because of the story and truth but, because of the attention the "news" article could and would eventually get BuzzFeed, Baker, and Smith on the internet.

75.     Upon investigation Baker, Smith, and BuzzFeed realized the facts did not support their theory and facing the drastic but certain probability of losing their shot at "viral" success, they ignored what they knew, manipulated facts, ignored facts, and willfully discounted many "red flags" demonstrating their narrative was

false. The Defendants wrongfully and intentionally ignored the truth, wrote, and published their false rendition of the Rondini/Bunn situation and the Plaintiffs' investigation.

76.   The Defendants' articles demonstrate that they had full access to the Plaintiffs' investigative material and therefore, knowledge of the facts concerning the underlying July 1st and 2nd, 2015, Bunn/Rondini situation and the subsequent investigation. The Defendants' purposely failed to fairly and accurately report the truth.

77.   The Defendants' articles artfully, purposely, and systematically avoided the facts that did not support their false rendition of what happened between Rondini and Bunn. The libelous articles also ignored and distorted the narrative about the Plaintiffs' investigation.

78.   Given the material and information Baker, Smith, and BuzzFeed admittedly had, and what they knew from their pre-publication research and the police investigation materials, the Defendants acted purposely with knowledge of falsity in making the libelous statements and creating libelous and false implications about the Plaintiff officers in the subject articles. The Defendants knew much of the article was false. At the very least, the BuzzFeed Defendants acted with reckless disregard of the truth because Baker and Smith had serious doubts as to the truth of

what they intended to report regarding the Plaintiffs and their investigation as well as about the assumed underlying "rape" of Megan Rondini.

79.    Baker, Smith, and BuzzFeed knew the facts concerning both the sexual encounter between Bunn and Rondini and the subsequent Jones and Hastings investigation. Baker, Smith, and BuzzFeed, instead of acting in good faith regarding their factual knowledge and while entertaining serious subjective doubts on the veracity of the published article, nevertheless, wrote and published the false account about both the sexual assault and the officers' job performance during the investigation. The Defendants knew that the facts reported, and implications made from them were probably false when they wrote and published them anyway. This demonstrates subjective "actual malice."

80.    The facts establish that despite what BuzzFeed, Smith, and Baker knew from their article research, the Defendants purposely avoided the truth when they published the libelous articles. They acted with specific intent and purpose to prevent publishing the truth in the articles. They ran from obvious truths.

81.    Baker, Smith, and BuzzFeed admittedly had full access to evidence of the facts including but not limited to:

    a)  Information from Megan Rondini's friends and her parents, Mike Rondini and Cynthia Rondini.

b) The information contained in the homicide investigation files compiled and maintained by investigators, Jones and Hastings and their department.

c) Information from the files as to what Megan Rondini and T.J. Bunn told the investigators.

d) Investigative information regarding what Megan Rondini's friends told the investigators.

e) Information from Bunn's attorney.

f) Information about Alabama's rape law and the legal standards applicable for police and prosecutors to pursue rape charges in Alabama.

g) Information about the investigative interviews and evidence provided by Rondini, Bunn, through recorded video, audio, and written statements.

h) Information that the Plaintiff investigators were duty bound to gather all the evidence they could and to test that evidence against Alabama's law to determine whether or not they should charge someone.

i) Access to factual information from Ms. Rondini's interviews and written statements and phone records regarding her social history at

school, her frequent visits to Innisfree Pub, her drinking habits at bars (even though she was underage), and knowledge belief that T.J. Bunn, Jr., "Sweet Tea," was from a wealthy and influential family in the Tuscaloosa community.

j) Information negating the articles' assertions and the author's claims that Rondini "blacked out" between the time she left the pub until she was in Bunn's car on the way to his home.

k) Unreported information from videos, text messages and interviews that show Ms. Rondini had not blacked out but instead was awake and alert during the visit to her apartment and was texting and Snapchatting friends during the trip to Bunn's house.

l) Access to the initial incident reports taken at the hospital both DCH Doctor and employees and a Tuscaloosa Police Officer.

m) Copies of the audio and video interviews with Rondini, Bunn, and other witnesses.

n) Access to the information on Megan Rondini's cell phone which was downloaded by both the Plaintiffs during the interviews with Megan Rondini on July 2, 2015. This material was used in the first BuzzFeed article by Baker.

o) Two pages of notes from the investigation file about which the article says, Rondini "brought two pages of handwritten notes she'd taken so she wouldn't forget any details.

p) Text messages on Rondini's phone she sent during the interview regarding investigator Jones being upset about the gun.

q) The notes and records from therapists at the University's Women and Gender Resource Center.

r) Text messages from Rondini's phone after she returned to the University for the fall semester in August 2015.

82.    BuzzFeed, Baker, and Smith discovered and reviewed the evidence, including the trip monitoring videos and Rondini's phone records. Defendants knew Rondini was not raped or subjectively had serious doubts regarding whether Bunn had raped Rondini. The Defendants also knew there was no possibility of sustainable rape charges or had serious subjective doubts on whether or not sexual assault even occurred and knew charges could not be brought, factually or legally under the Alabama law.

83.    The text message conversation between Rondini and her friends during the time Rondini was allegedly "blacked out" according to the article, is evidence that Baker, Smith, and BuzzFeed knew there was little or no credibility to the

Rondini sexual assault/rape allegations. There was even doubt about whether Rondini ever made a rape claim at all to investigators Jones and Hastings.

84.   BuzzFeed and Baker knew it was much more likely than not that the sexual encounter between Bunn and Rondini was planned, welcomed, voluntary and consensual from Rondini's perspective.

85.    Significantly, Baker, Smith, and BuzzFeed also knew that if they disclosed and/or acted on the facts and reported on the evidence showing Rondini's clear intent to have voluntary, consensual sex with Bunn, that BuzzFeed could not publish and would have to scrap the pre-planned, sensational, and "viral" story. The entire basis for the story was a false assertion that Mr. Bunn raped Ms. Rondini and got away with it because the Plaintiffs failed to do their duty as police investigators.

86.   Rather than not publish or publish the truth, Baker, Smith, and BuzzFeed decided to ignore the facts and publish the story, absent the truth, to help Defendant BuzzFeed gain "viral" success online by slandering the Plaintiffs.

87.   The article states that Rondini told the investigators she didn't recall calling or texting anyone while in Bunn's car on the way to his house. The defamatory publication also ridiculously claims Rondini was "blacked out" or could not remember the texts.

88.   However, the most pertinent and unfavorable portion of Megan Rondini's text message dialog during the early morning of July 2, 2015, transpired

during the ride in Bunn's Mercedes from her Houndstooth Residence on 15th Street to Bunn's house in Cottondale.

89.    The distance between Rondini's apartment and Bunn's Cedar Drive house in Cottondale is approximately 7 miles or roughly a 15-minute drive. During the ride out to Bunn's home, Rondini texted with friends in the following conversation:

- **12:05 a.m. Megan to Friends: "Pick me up in the morning"**

- **12:06 a.m. Friend to Megan: "Kk I have class at 10 so early ish"**

- **12:08 a.m. Megan to Friends: "We are going to guck"**

- **12:08 a.m. Megan to Friends: "😎"**

- **12:11 a.m. Friend to Megan: "Do it 🕛"**

- **12:11 a.m. Friend to Megan: "Wear a condom"**

- **12:11 a.m. Friend to Megan: "Good luck"**

- **12:13 a.m. Megan to Friends: "Eww but I'll make it real good"**

- **12:14 a.m. Friend to Megan: "Hahah like a tru horseback rider"**

90.    Ms. Rondini and her friends' text conversation contradicts Defendants' pre-conceived storyline published in the libelous articles about the

Investigators, other individuals, and entities. Baker, Smith, and BuzzFeed knew about these texts. Nevertheless, Baker and BuzzFeed published the subject article knowing it was highly likely there was no rape of Ms. Rondini and that it was impossible to bring criminal charges against Bunn. Defendants' knowledge of the text message conversation is subjective evidence of actual malice that goes far beyond mere plausibility.

91.    The defamatory article, without regard to the truth and regard to the fact Baker, Smith, and BuzzFeed knew their rape premise was not true, falsely reported that Jones and Hastings failed to do their jobs, bullied Rondini who was an innocent rape victim, falsely accused her of crimes, were not adequately trained or supervised, and were involved in a conspiracy with their superiors and others to let a guilty, but rich rapist get away with the rape of a young student in deference to his family's wealth and status in the community.

92.    BuzzFeed solicited comments and published them after posting the article online. Those comments establish that BuzzFeed readers believed these false assertions. This result followed the Defendants' agenda driven goal, and the Plaintiff investigators were after that subjected to hate and ridicule. The Plaintiffs suffered irreparable harm in their community, across the nation, and worldwide.

## DAMAGES

93.     The Defendants' defamatory articles accuse the Plaintiffs of crimes and/or extreme moral delinquency subjecting the Plaintiffs to disgrace, ridicule, odium, and/or contempt in their community and nationally which is slander per se.

94.     The Defendants' libelous articles injured the Plaintiffs' reputations, lowering them in the estimation of their community and deterred others from associating with them. As evidence of this, Defendant BuzzFeed posted numerous public comments on their various websites. Defendant BuzzFeed also embedded those comments directly below the articles' on their main website. The defamatory articles incited numerous reader comments *(attached hereto and incorporated herein as Exhibit 5)* leading to extraordinary damage to the Plaintiffs' reputation and community standing.

95.     The Defendants solicited public feedback regarding the libelous articles and posted those comments online. These comments indicate the terrible public reaction to the defamatory articles provoking horrible statements about the Plaintiffs and their moral integrity. A selection of those comments is included here:

- "**These police officers should be in jail**. **They blamed the victim, were paid by the rapist to cover it up, and are 100% responsible for her death.** This bastard is still out there raping women, because Tuscaloosa has no cops, no district

**attorney, and is in fact bought and paid for by one evil murdering rapist bastard."**

- "For her family and friends, my heart grieves. There are no words to describe how heartbroken and sorry I am for everything they've been put through and are going through. Similarly, **there are no words to describe how disgusted and ashamed I am of the investigation team**, UA, and my state in general."

- "The "good ol'boys club" need to be disbanded and prosecuted. I hope the Dept. of Justice takes this up and makes the Tuscaloosa dept. responsible for their negligent acts."

- "The men in authority bent the rules to help the rapist but the women in authority "followed protocol" even if it ended up hurting Megan…"

- "There are so many things wrong with this story. A woman goes to the police to report sexual assault and the investigator becomes more concerned with the fact she took THREE DOLLARS and a gun. She was raped, why is self-defense so shocking afterward? To the ignorant investigator: you didn't believe her because she didn't try to fight him off, but you get

upset with her for taking a gun for her safety. That doesn't make a lot of sense, does it? Another point- a woman didn't take her own life because she endured CONSENSUAL SEX- she took her own life because she was raped and instead of receiving help, she was accused of crime; her issue completely ignored. Then the jury- AFTER SHE KILLS HERSELF- decides to not prosecute him. This story is horrifying; this man sued his way out of a DUI, using his family's power and wealth to save himself from any sort of repercussions from the law for dangerously DRIVING DRUNK, **so why are so many men of the police department putting rape past him- using his money for a great lawyer and his power to have these officers up his ass. The law should not be stretched for someone who is wealthy, especially with someone else's livelihood at stake.** How much more does this 10/98 cases need to grow, and how many more women need to be ignored, develop mental health issues, drop out of school/college, check into a mental institution, see therapists, even take their own lives before something is seriously changed in this system?"

- "**I hope the cops are charged with negligent homicide because their negligence led to her death.** Anyone telling a rape victim 'You consented. You just don't remember doing it' has **no business being in law enforcement**"

- "…I am **so disappointed in how agencies reacted under big money influence and "good 'ole boy" politics….Most of all - Tuscaloosa PD - atrocious handling of the investigation. It was apparent that they were biased in favor of Bunn from the start - leading questions to damage her and leading questions to help him.** So so wrong! I'm usually a very strong supporter of Law Enforcement, but **I gotta say, in this case they really come off as the bad guys**!"

- "I'm originally from Tuscaloosa and love my hometown however I am absolutely shocked but not surprised by this situation. **What a terrible injustice -- just because a prominent family knows "everybody" does not excuse the unacceptable way that Tuscaloosa's law enforcement agency conducted the investigation.** Makes me sick to think that once the alleged perpetrator was interviewed, the conversation centered initially around a "fishing trip". Totally outrageous. What happened to

this young woman and the way she was treated is a classic example of the "good ole' boy" network in Tuscaloosa County."

- "Tuscaloosa law enforcement…**Josh Hastings**, UA Tuscaloosa and too many others to name...**I pray you get everything you deserve....which is to rot and burn in hell. God WILL deal with you** all."

- "This Bunn guy and that **investigator Jones are just the start of the list of people that disgust me.** In what world is it not considered rape unless she was violent back against him? She said no, that's all it matters."

96.  Plaintiffs suffered and continue to incur substantial damages as resulting from the Defendants' publication of the libelous articles including defamatory statements and misleading inferences.

97.  On September 24, 2018, Plaintiffs sent a retraction demand to the Defendants.[10] On October 11, 2018, Defendants refused to retract the defamatory sections of the articles.[11]

---

[10] *See Exhibit 3 attached hereto and incorporated herein*
[11] *See Exhibit 4 attached hereto and incorporated herein*

## COUNT ONE

**DEFAMATION & LIBEL FOR PUBLICATION OF THE JUNE 22nd, 2017
AND JULY 3rd, 2017 ARTICLES BY BUZZFEED, BEN SMITH AND
KATIE J.M. BAKER**

98.     Plaintiffs, Hasting and Jones, re-allege and incorporate each of the foregoing paragraphs as if fully set forth here.

99.     Defendants, BuzzFeed, Smith and Baker, published the first libelous article headlined, "A College Student Accused a Powerful Man of Rape, Then She Became a Suspect", to the public on June 22, 2017.

100.    Defendants published a follow-up article involving the same subject on July 3rd, 2017 entitled, "The Parents of a College Student Who Killed Herself After Reporting She Was Raped Have Filed a Wrongful Death Suit." This article repeated and confirmed BuzzFeed's initial publication concerning the Plaintiffs and continued the defamatory and untrue narrative that Investigators Hastings and Jones incompetently and corruptly investigated Megan Rondini's claims regarding her encounter with T.J. Bunn.

101.    The Defendants' articles contain defamatory statements and false implications about Adam Jones and Joshua Hastings libeling them regarding their jobs as law enforcement investigators and as persons of high moral integrity.

102.   The public comments and reactions after reading the subject articles leave no doubt the Defendants intended to accuse the Plaintiff officers of incompetence, corruption, being morally bankrupt, and other wrongdoing concerning the Rondini/Bunn investigation. Reader comments demonstrate the Defendants successfully accused the Plaintiffs of such moral and professional failings.

103.   Plaintiffs' reputations as highly skilled and competent law enforcement investigators of high moral character were severely damaged when the Defendants published the subject articles' false allegations and implications. The misleading statements and intended false inferences were designed to and did harm the Plaintiffs' reputations both professionally and personally. Plaintiffs and their families were subjected to hatred and contempt in their community deterring people from associating with them.

104.   Defendants caused substantial harm to both Jones and Hastings, as set forth herein when they published the articles including false and defamatory statements and implications about the officers.

105.   BuzzFeed, Smith, and indeed Ms. Baker knew the subject statements and implications were false concerning Jones and Hastings or the Defendants had evidence such that they subjectively had serious doubts as to the truth of the same.

106.   The Defendants, based on the evidence, knew the libelous information published was likely false and/or in need of further investigation and review. Defendants' failure to do so amounts to "actual malice."

107.   BuzzFeed, Smith, and Baker purposely avoided the truth, deliberately failed to investigate, and ignored the material available to them. Defendants did not follow fundamental reporting obligations. Instead, they sidestepped facts publishing dishonest and defamatory articles concerning the Plaintiffs to promote their "rape culture" agenda-driven narrative and distributing the articles as "investigative journalism" to the public.

108.   BuzzFeed, Smith, and Baker knew their articles falsely characterized the Plaintiffs and their role in the narrative or recklessly disregarded the truth about Hastings and Jones and their investigation when they published the libelous articles.

109.   Defendants' published articles that are libelous, dishonest, malicious, willful, and wanton demonstrating a conscious and purposeful disregard for the assured harm inflicted on the Plaintiffs and their families. Under these circumstances, punitive damages are entirely appropriate and warranted.

110.   The Defendants' statements, set forth herein concerning Plaintiffs Jones and Hastings, are libelous per se. Defendants' statements falsely accuse these officers of being unfit to perform their duties as investigators, intentionally abandoning their law enforcement responsibilities, corruptly investigating the

Rondini/Bunn situation, and being improperly influenced in an attempt to curry favor with Bunn and his family. The Defendants portrayed the Plaintiffs as morally bankrupt.

111.   The articles' accusations and implications prejudiced and harmed the Plaintiffs regarding their profession as law enforcement officers and subjected them and their families to unjust ridicule, condemnation and caused other damages set forth herein.

**WHEREFORE**, Plaintiffs respectfully requests an award of damages proceeding from the illegal libelous conduct of the BuzzFeed Defendants as follows:

1) An award by the jury of compensatory damages in excess of the jurisdictional amount of seventy-five thousand dollars ($75,000) to compensate each Jones and Hastings for the damage caused including the damage inflicted upon their reputation, their public ridicule and contempt, their standing in the community, their personal humiliation, their inconvenience and aggravation and their mental anguish and suffering.

2) An award of punitive/exemplary damages given the conscious and deliberate conduct of the Defendants in engaging in oppression, fraud, wantonness, and malice in such amount as the jury deems necessary and just to first punish the Defendants by money damages for their conduct

and secondly to deter the Defendants and others similarly situated from doing such wrongs in the future.

3) An award of money damages for each repetition of the libelous articles because the Defendants, as the original defamer, encouraged repetition at the time of the publication when they promoted "share" "like" and "comment" opportunities of the defamatory articles including Defendants' native advertising campaign driving readers to their content.

Plaintiffs request an amount to be determined by a jury and such other, further or different relief which the Court finds appropriate.

**PLAINTIFFS REQUEST A TRIAL BY JURY.**

*Respectfully submitted this 7th day of March, 2019.*

## ACKNOWLEDGEMENT

STATE OF ALABAMA                    §
                                   §
TUSCALOOSA COUNTY                   §

    Before the undersigned authority this day personally appeared **JOSHUA HASTINGS** after being by me first duly sworn, deposes and says that the matters, facts and things set forth and averred in the foregoing Complaint is accurate as to his investigation herein set forth.

_____
JOSHUA HASTINGS

*Sworn and subscribed before me on this the 7th day of March, 2019.*

_____
NOTARY PUBLIC
My Commission Expires: 8/30/2022

## ACKNOWLEDGEMENT

STATE OF ALABAMA           §
                           §
TUSCALOOSA COUNTY          §

Before the undersigned authority this day personally appeared **ADAM JONES** after being by me first duly sworn, deposes and says that the matters, facts and things set forth and averred in the foregoing Complaint is accurate as to his investigation herein set forth.

_____
ADAM JONES

*Sworn and subscribed before me on this the 7th day of March, 2019.*

_____
NOTARY PUBLIC
My Commission Expires: 8/30/2022

*/s/ Bobby H. Cockrell, Jr.*
Bobby H. Cockrell, Jr. (COC-008)
Attorney for Plaintiff
bcockrell@cctr.law

*/s/ Jonathan D. Townsend*
Jonathan D. Townsend (TOW-014)
Attorney for Plaintiff
jtownsend@cctr.law

*/s/ G. Scotch Ritchey, Jr.*
G. Scotch Ritchey, Jr. (RIT-024)
Attorney for Plaintiff
sritchey@cctr.law

**OF COUNSEL:**
COCKRELL, COCKRELL, TOWNSEND & RITCHEY, LLP
1409 University Boulevard
Tuscaloosa, Alabama 35401
Telephone: (205) 349-2009
Facsimile: (205) 758-3090

## CERTIFICATE OF SERVICE

I, the undersigned, hereby certify that I have on this date, served a copy of the foregoing upon the following via private process server, and/or by U.S.P.S. certified mail, return service requested, with adequate postage prepaid, and/or electronic mail, and/or regular mail, and/or hand delivered, and/or by filing a copy of the foregoing using the AlaFile system which will automatically notify all counsel of record, and/or by filing a copy of the foregoing with the Clerk of Court using the CM/ECF system which will provide notice to the following CM/ECF participants:

*BuzzFeed, Inc.*
*BuzzFeed News (a subdivision of*
*BuzzFeed, Inc.)*
*Ben Smith*
*Katie J.M. Baker*
**111 E 18th Street**
**Floor 13**
**New York City, New York, 10003**

/s/ Bobby H. Cockrell, Jr.
*Of Counsel*