FILED

2019 Mar-07  PM 03:39
U.S. DISTRICT COURT
N.D. OF ALABAMA

# EXHIBIT 2

Article published on July 3, 2017

7/6/2017     The Parents Of A College Student Who Killed Herself After Reporting She Was Raped Have Filed A Wrongful Death Suit

Case 7:19-cv-00403-RDP   Document 1-2   Filed 03/07/19   Page 2 of 19

**BuzzFeed NEWS** / REPORTING TO YOU

# The Parents Of A College Student Who Killed Herself After Reporting She Was Raped Have Filed A Wrongful Death Suit

A lawsuit accuses law enforcement and university officials of failing to give Megan Rondini, the subject of a BuzzFeed News story, the help she needed after she reported being assaulted by a wealthy man in Tuscaloosa, Alabama.

Posted on July 3, 2017, at 10:28 a.m.


Tyler Kingkade
BuzzFeed News Reporter



Megan Rondini in August 2014
*Courtesy the Rondini Family*

Share                    Share

7/6/2017    The Parents Of A College Student Who Killed Herself After Reporting She Was Raped Have Filed A Wrongful Death Suit

Case 7:19-cv-00403-RDP  Document 1-2  Filed 03/07/19  Page 3 of 19

The parents of a young woman who killed herself after alleging she'd been raped by a wealthy Alabama man have sued the accused attacker, law enforcement officers, and a university Title IX official, alleging their "faulty practices" and "mishandling" of the case drove their daughter to hang herself.

The story of Megan Rondini, who was a student at the University of Alabama in Tuscaloosa when the alleged rape occurred, was detailed in a recent BuzzFeed News story.

The 25-page wrongful death suit filed Sunday by Rondini's parents, Michael and Cynthia Rondini, charges that Tuscaloosa Sheriff's Department deputies were intentionally dismissive when Rondini reported in July 2015 that she was raped by T.J. Bunn, Jr., one of six defendants named in the suit. It accuses investigator Adam Jones and deputy Joshua Hastings of the Tuscaloosa Sheriff's Department of conducting sloppy investigations. Also named in the suit is Tuscaloosa Sheriff Ronald Abernathy, for allegedly failing to properly train his department in how to handle sexual assault reports.

In addition, the Rondinis are suing Beth Howard, the University of Alabama's Title IX coordinator, who also held that position when their daughter reported she had been raped; and Cara Blakes, who was a graduate student working as a therapist at the school's Women and Gender Resource Center.

All of the defendants "negligently, recklessly, wantonly, and/or wrongfully acted or failed to act in response to Megan's reported sexual assault," the lawsuit alleges. As a result, it says, Megan Rondini suffered "extreme depression, anxiety, PTSD, fear, panic attacks, decline of cognitive functions and general well-being, weight loss, and feelings of worthlessness and hopelessness, all of which directly led to Megan's loss of life."

# "Megan was ultimately treated as a crime suspect and her status as a victim of a sex crime was completely disregarded."

W. Ivey Gilmore, Jr., an attorney for Bunn, said in a statement Monday that the accusations against his client in the suit are false.

"It is, perhaps, natural to want to find someone to blame when a young woman takes her life," Gilmore said. "But accusing law enforcement and those who counseled this young woman for her actions is misguided. Unfortunately, bringing this matter before the courts in this civil action will only prolong grief without changing the reality."

The suit, filed by Birmingham-based attorney Leroy Maxwell Jr., seeks an unspecified amount of damages.

Megan Rondini's death came to light in the BuzzFeed News report, which used law enforcement interrogation videos, text messages, and other documentation to show her growing frustration after she told Tuscaloosa law enforcement that she'd been raped after a night out with friends. Rondini accused T.J. Bunn Jr. in the assault, but Bunn said they had consensual sex. Tuscaloosa officers questioned why Rondini didn't kick or hit Bunn and concluded the incident did not meet Alabama's legal requirements for rape. They also questioned Rondini about crimes she had allegedly committed, including taking money and a gun from Bunn's car as she fled his home after the alleged assault. Rondini ultimately dropped the case, left the University of Alabama, and moved back to her native Texas, where she hanged herself in February 2016. Bunn was never charged with a crime.

The article led to outrage in Congress. Last Wednesday, Rep. Ted Poe, a Republican from Texas, described Rondini's case and said "she got the death penalty" after reporting she'd been sexually assaulted. Poe criticized Tuscaloosa investigators, saying they treated Rondini "with disdain and disbelief."

"It's easy to second guess what someone should or should not have done after emotional trauma of sexual assault, but Megan believes she did everything a rape victim is supposed to do," Poe said on the House floor.



*youtube.com*

The lawsuit says Tuscaloosa officers failed to test Rondini's rape kit, failed to interview witnesses, and failed to record all of the interviews they did conduct. Their behavior "was intentional and due to Megan Rondini's female gender," the suit alleges.

"Megan ultimately was treated as a crime suspect and her status as a victim of a sex crime was completely disregarded," the lawsuit alleges.

"The only conclusive evidence gathered from the investigation was that Megan tested positive for a sexually transmitted disease that she contracted from non-consensual sex with Defendant Bunn," the suit states.

Bunn's family is well-known in the Tuscaloosa area. His father and uncle own S.T. Bunn Construction, which took down its website following the BuzzFeed News story as people online directed outraged readers to their contact page. In a statement released shortly after the story appeared, Bunn's family called the article "an intentional distortion of facts in a tragic case," and said Rondini's family had previously sought to sue "various parties who are the targets of these unfounded accusations."

# "It was just like a good ol' boys club in there."

"It is tragic that this young woman took her own life, but defaming an entire city, its leaders, its institutions and a prominent family brings no honor to this tragedy and no justice for anyone," the Bunn family said in its statement.

The University of Alabama has said the BuzzFeed News story "ignored some significant facts," including that it gave Rondini information about services available to her on campus. It also noted that it referred Rondini to another counselor because the first one she met with after the alleged assault knew the Bunn family and recused herself from the case.

However, the Rondini family claims in the lawsuit that the second counselor Rondini was referred to, Cara Blakes, "inexplicably denied Megan counseling services" until she began taking anti-anxiety medication. The lawsuit alleges this was a violation of Rondini's rights under the Americans with Disabilities Act. The suit also says that Beth Howard, the University of Alabama's Title IX coordinator, ignored calls and messages from Rondini's family requesting help for their daughter.

The suit was filed in US District Court in Alabama.

Anna Voremberg, a board member of End Rape on Campus, an advocacy group that has assisted Rondini's parents, accused investigators of appearing more sympathetic to Bunn in videotaped interviews than to Rondini, who was the one reporting a violent crime.

7/6/2017          The Parents Of A College Student Who Killed Herself After Reporting She Was Raped Have Filed A Wrongful Death Suit

Case 7:19-cv-00403-RDP   Document 1-2   Filed 03/07/19   Page 6 of 19

enforcement officers truly fail survivors of sexual violence and their community."

*Katie J.M. Baker contributed reporting.*

Tyler Kingkade is a national reporter for BuzzFeed News and is based in New York City.
Contact Tyler Kingkade at tyler.kingkade@buzzfeed.com.

Got a confidential tip? Submit it here.

News moves fast. Keep up with the BuzzFeed News daily email!

| Your email address | Sign up |
| --- | --- |

Promoted by

**BuzzFeed Home**
**Sitemap**
© 2017 BuzzFeed, Inc.

7/6/2017 The Parents Of A College Student Who Killed Herself After Reporting She Was Raped Have Filed A Wrongful Death Suit

Case 7:19-cv-00403-RDP   Document 1-2   Filed 03/07/19   Page 7 of 19

# EXHIBIT 3

Retraction Demand Letter sent on September 24, 2018

Bobby H. Cockrell, Jr.
Ginger D. Cockrell
Steven W. Ford

# Cockrell, Ford
## Townsend & Ritchey
### ATTORNEYS AT LAW LLP

G. Scotch Ritchey, Jr.
Burke M. "Kee" Spree
Jon D. Townsend

1409 University Blvd. Tuscaloosa, Alabama 35401 • Telephone (205) 349-2009 • Facsimile (205) 758-3090

September 24, 2018

Ben Smith, Editor in Chief
Buzzfeed, Inc.
111 E. 18th Street
13th Floor
New York, NY 10003

Katie J.M. Baker
111 E. 18th Street
13th Floor
New York, NY 10003

Tyler Kingkade
111 E. 18th Street
13th Floor
New York, NY 10003

RE:   **Demand for Retraction**
      **Our Clients: Investigators Adam Jones and Josh Hastings**

Dear Mr. Smith, Ms. Baker, and Mr. Kingkade:

Please be advised that I and my firm represent, Investigators Adam Jones and Josh Hastings of the Tuscaloosa County, Alabama Sheriff's Office regarding the libelous articles published by Buzzfeed News. The libelous articles are: (1) "A College Student Accused A Powerful Man Of Rape. Then She Became A Suspect." (a.k.a. "How Accusing A Powerful Man of Rape Drove A College Student To Suicide"), written by Katie J.M. Baker and published by Buzzfeed News on June 22, 2017; and (2) "The Parents Of A College Student Who Killed Herself After Reporting She Was Raped Have Filed A Wrongful Death Suit," written by Tyler Kingkade and published by Buzzfeed News on July 3, 2017.

Buzzfeed News and the articles' writers knowingly published defamatory and patently false statements about Investigators Jones and Hastings which constitutes libel per se. Notwithstanding your explicit knowledge that certain statements contained in the articles were untrue, you published these allegations concerning Investigators Jones and Hastings and purposefully omitted facts you and the articles' writers were privy to. Said articles suggested that Ms. Rondini was failed by Investigators Adam Jones and Josh Hastings by negligently and intentionally conducting the rape investigation in such a way to cover and protect T.J. Bunn because he was from a wealthy and influential family.

Your libelous allegations and intentional omissions include, but are not limited to, the following:

1.     Stating that Tuscaloosa County Homicide Investigator Jones, the assigned investigator, quickly decided that Megan Rondini had not fought back against T.J. Bunn. The full interview of Ms. Rondini with Investigator Jones should have been included in the articles. The full interview shows that Investigator Jones attempted to elicit a statement from Ms. Rondini that would meet the elements of rape or another sexual offense, as defined by the Alabama Code.

Page **1** of 4

2.     Stating that Investigators Jones and Hastings started building a case against Ms. Rondini and intentionally implying that there was no criminal case against her. Again, the full interview between Ms. Rondini and Investigator Jones should have been included in the articles. The full interview shows that Investigator Jones began questioning Ms. Rondini about the stolen money and gun only after Ms. Rondini admitted to taking the money and gun. Further, Investigator Jones tried to get Ms. Rondini to explain her reasons for taking the money and gun. All of these facts were recorded in the video interview of Ms. Rondini and were intentionally omitted from your articles.

3.     Ignoring the actual video of Ms. Rondini leaving and entering her apartment, recorded on July 1 and July 2 of 2015, where she did not appear to be "blacked out" or in any way drugged. This video directly contradicts multiple statements made by Ms. Rondini in her interviews with Investigators Jones and Hastings.

4.     Ignoring Ms. Rondini's July 1 and July 2, 2015, text messages between her and her friends which explicitly stated Ms. Rondini's intentions with Bunn. The articles should have provided the text messages in full disclosure, especially when libelously criticizing Investigators Jones's and Hastings's investigation of the case and training concerning sexual offenses.

5.     Ignoring the fact that Investigators Jones and Hastings had to consider the fact that Ms. Rondini was physically and mentally able to climb in and out of a two-story window at Bunn's house without impaling herself on a wrought iron fence located just to the right of the ledge where she jumped off.

6.     Ignoring the physical and mental capacity of Ms. Rondini to pull a cooler and trashcan over to the second story roof ledge, climb back onto the second story roof ledge, and enter back into Bunn's bedroom, which is wholly inconsistent with an individual that has been drugged or for that matter raped.

7.     Implying that Investigators Jones and Hastings engaged in misconduct when classifying the case as a "special inquiry." A special inquiry merely classifies reported incidents that do not meet the elements of a crime or reported incidents that need more facts, evidence, or investigation in order to rise to the proper level necessary to charge an individual with the alleged crime.

8.     Omitting other evidence, you were privy to, that would lead Investigators Jones and Hastings, or any other reasonable investigator, to reasonably believe that they did not have probable cause to charge Bunn with rape or another sexual offense, as defined by the Alabama Code. Such evidence includes, but is not limited to, Ms. Rondini telling Investigator Jones that she never feared for her life during the incident, Ms. Rondini telling Investigator Jones that she did not try to fight or resist Bunn to the level required under Alabama law, and Ms. Rondini telling Investigator Jones that she let Bunn have sex with her because he was an influential person in Tuscaloosa.

9.     Omitting the two pages of handwritten notes composed by Ms. Rondini, in your possession, which clearly stated that Ms. Rondini let Bunn have sex with her, the video interviews

of Ms. Rondini where she stated, "when we had sex" and "we had sex." Ms. Rondini does not state that she earnestly resisted Bunn to the level required by Alabama rape law.

10.     Implying that there was something sinister about Investigator Jones "abruptly" leaving the room when Ms. Rondini explicitly represented that she left the loaded gun out in the open in Bunn's neighborhood and accessible to children and others.

11.     Implying that there was something sinister about Investigator Jones asking about Ms. Rondini's full behavior the night of the incident, instead of just the rape allegations alone.

12.     Omitting the fact that neither Investigator Jones nor Hastings was responsible for drawing blood or taking a urine sample from Ms. Rondini for forensic testing, when the hospital performed a basic rape kit. Additionally, in the full interview between Investigator Jones and Ms. Rondini, she did not state that any drug was involved and there was no evidence to suggest that drugs were involved. In addition, in Bunn's interviews, he expressly admitted to having sexual relations with Ms. Rondini. Also, intentionally omitted from the articles was a text message between Ms. Rondini and her father where he asked her whether the nurse had taken a blood sample to document if he (Bunn) had drugged her. Ms. Rondini replied, "I don't think I was drugged because my drink never left my friends." This text was omitted from your articles, slandering the good names and reputations of Investigators Jones and Hastings even though you had these facts and information in your possession.

13.     Implying that there was something sinister about Investigator Hastings's interview with Bunn and omitting the full recorded statement and video interview of Bunn that Investigators Hastings and Jones took on July 2, 2015 and July 6, 2015. Your articles intentionally omitted this information that would prove a complete, thorough, and fair investigation was conducted by investigators without interference from within the Sheriff's Office or otherwise. All of said evidence was inconsistent with a drug induced date rape or rape in general, as suggested by your articles.

The articles also failed to point out all the inconsistencies in Megan Rondini's story. Those inconsistencies are as follows:

1.     That Ms. Rondini informed investigators that T.J. Bunn and his friend drove her directly to Bunn's home. This was totally inconsistent with the apartment security video and Ms. Rondini's cell phone records that were made available to you, yet omitted from your articles.

2.     That Ms. Rondini informed investigators that she did not call or text anyone while in Bunn's car and Bunn's home. This is totally inconsistent with her cell phone text messages that were made available to you, yet omitted from your articles. At 12:05 A.M., Ms. Rondini texted to her friends: "Pick me up in the morning." At 12:08 A.M., Ms. Rondini texted to her friends: "We are going to guck." Also, at 12:08 A.M., Ms. Rondini sent an emoji with sunglasses. At 12:11 A.M., Ms. Rondini received a response from her friend: "Do it (money bag emoji)." At 12:11 A.M, friend responded, "Wear a condom" and "Goodluck." At 12:14 A.M., the friend responded: "Hahah like a tru horseback rider." All of these text messages sent by Ms. Rondini while in Bunn's car and home were available to you and your writers before the articles were published, yet omitted

to intentionally, falsely portray Investigators Jones and Hastings as incompetent investigators and falsely portrayed Investigator Jones and Hastings as intentionally protecting an influential rich man.

      3.    Three Snapchat videos sent by Ms. Rondini at 12:22 A.M., later saved on her phone, were also purposefully omitted. The videos showed the inside of Bunn's house where animals were mounted on the wall from his hunting excursions. These videos contained Ms. Rondini's voice as she described the animals that she was videotaping. These actions are totally inconsistent with someone who has been drugged and also inconsistent with her statements that she did not send texts or messages while at Bunn's home. Certainly Ms. Rondini did not appear to be stressed, but on the contrary enjoying herself.

      4.    You also omitted from your articles a statement made by Megan Rondini to Investigator Jones. Ms. Rondini stated that "it wasn't hostile we were just all in the car together."

      5.    The investigative report in its entirety; including, but not limited to, the full video and audio statements of both Ms. Rondini and Bunn, Ms. Rondini's text messages to her friends and family, the full video of Ms. Rondini leaving Innisfree one minute behind T.J. Bunn and his friend, the full apartment security video showing Ms. Rondini leading Bunn and his friend into and out of her apartment with only a 15 minute stay, and the three Snapchat videos she sent friends from inside T.J. Bunn's home; contained evidence that Ms. Rondini was not drugged or there against her will, but evidenced that she was acting by her own choice and free will. When the evidence is considered in its entirety, Investigators Jones and Hastings, as well as prosecutors, came to the conclusion that the elements of rape, or another sexual offense, under Alabama's law, whether archaic or not, were not met.

      Due to the fact that all of the above information was in your possession or legally obtainable prior to the publication of the two above referenced articles, we demand you immediately cease publication of these articles, immediately remove the articles from your website, and issue a full and immediate retraction within five (5) days of receipt of this letter. If you do not cease publication of these articles, remove these articles from your website, and issue a full retraction, we will pursue legal action and remedies against Buzzfeed, Inc., Buzzfeed News, Katie J.M. Baker, Tyler Kingkade, and others. Thank you for your prompt attention to this matter.

      Best regards,

Bobby H. Cockrell, Jr.
COCKRELL, FORD, TOWNSEND & RITCHEY, LLP
1409 University Blvd. | Tuscaloosa, AL 35401
P: (205) 349-2009 | F: (205) 758-3090
bcockrell@cftr.law

# EXHIBIT 4

Retraction Demand Response Letter sent on October 11, 2018



21st Floor
1251 Avenue of the Americas
New York, NY  10020-1104

**Rachel Strom**
(212) 402-4069 tel
(212) 379-5244 fax

rachelstrom@dwt.com

October 11, 2018

Bobby H. Cockrell, Jr.
Cockrell, Ford, Townsend & Ritchey, LLP
1409 University Blvd.
Tuscaloosa, AL 35401
bcockrell@cftr.law

**Re: Adam Jones and Josh Hastings/BuzzFeed, Inc.**

Dear Mr. Cockrell,

I am outside counsel for BuzzFeed, Inc.  I write regarding your September 24, 2018 correspondence on behalf of Investigators Adam Jones and Josh Hastings demanding a retraction of the BuzzFeed News article titled, "*A College Student Accused A Powerful Man of Rape. Then She Became a Suspect*" (the "Article") and, to some extent, the follow-up report titled "*The Parents Of A College Student Who Killed Herself After Reporting She Was Raped Have Filed A wrongful Death Suit,*" (the "Follow-Up Report").  We have carefully reviewed your demand, disagree with your assertions, and concluded that your clients have no claim.  As such, we respectfully decline your demand to retracting the Article or the Follow-Up Report (together, the "Articles").

## I.     THE ARTICLES ARE PRIVILEGED AS FAIR AND TRUE REPORTS

Although the specific issues your clients have with the Articles are not actionable for all the reasons listed in Part II, below, we note at the outset that your chief complaint – that the Articles do not take your clients' side of the investigation into Megan Rondini's allegations of rape into consideration (the "Rondini Investigation") – is meritless and not actionable.  Rather, the Articles are fully privileged as fair and true reports of the Rondini Investigation.

The Articles at issue are the result of BuzzFeed's own intensive and through investigation into the Rondini Investigation.  They lay out how Ms. Rondini went from reporting her claim that she was raped by one of the most prominent men in Tuscaloosa to, that same day, becoming a criminal suspect after she herself admitted to taking three dollars and a gun (for no more than a few minutes) from her alleged rapist when she tried to leave the scene of the house of where she claimed she was raped.  The Articles also report that even though your clients were interested in investigating Ms. Rondini's theft, Mr. Bunn was never so much as charged with any crime, even though he lied to the police during their investigation by claiming that Mr. Rondini was never at

Mr. Cockrell
October 11, 2018
Page 2

his house when, as he later admitted, not only was she at his house but that they did, in fact, have sex.  Importantly, your clients, do not, and cannot dispute any of these fundamental points – and this dooms your clients' peripheral complaints.

Specifically, BuzzFeed has a privilege to fairly and accurately report on government proceedings, including the Rondini Investigation.  *See* N.Y. Civ. Rights L. § 74; *Wilson v Birmingham Post Co*., 482 So. 2d 1209, 1211 (Ala. 1986).  In fact, courts have recognized that reporting on law enforcement investigations are particularly important as it furthers this nation's "strong policy" of allowing citizens to "'monitor the conduct of its government' and its personnel, such as law enforcement officers."  *Wilson*, 482 So 2d at 1211.

Apparently, your clients have now latched on to some text messages that Mr. Bunn is using to support his defense in a wrongful death suit.  *See* https://www.al.com/news/birmingham/index.ssf/2017/07/lawyer_for_man_accused_in_alle.html. But the Article at issue here is about the Rondini Investigation, and those messages were never a part of the Rondini Investigation.  They were never once mentioned in Investigator  Jones' interrogation of Ms. Rondini nor cited in the Felony Packet, which contains support for law enforcement's conclusion that "no sexual assault occurred."  They were not brought by your clients after BuzzFeed sought their comments before publication of the Article nor were they mentioned by Captain Gary Hood in his extensive email exchange with Katie Baker, the author of the piece, when he provided support for law enforcement's conclusion that no rape occurred.  And, more than that, there is no proof that Ms. Rondini sent the messages herself – indeed, there were hours of time that evening where her memory lapsed and anyone could have used her phone.

At bottom, your clients' focus is on what *they* wish BuzzFeed had included in the Articles, but in reporting on a judicial proceeding or investigation, "there is 'no requirement that the publication report the plaintiff's side of the controversy.'"  *Alf v. Buffalo News, Inc.*, 100 A.D.3d 1487, 1489 (4th Dep't 2012) (quoting *Cholowsky v. Civiletti*, 69 A.D.3d 110, 115 (2d Dep't 2009)), *aff'd,* 21 N.Y.3d 988 (2013).  Thus, notwithstanding a libel plaintiff's contention that an "article … is misleading because it focuses on only one aspect of the … lawsuit," the fair report privilege fully applies so long as – like this case – "the basis for each of the contested statements may be found in" the proceeding being reported.  *Tenney v. Press-Republican*, 75 A.D.3d 868, 868–69 (3d Dep't 2010).  *See also McDonald v. E. Hampton Star*, 10 A.D.3d 639, 639–40 (2d Dep't 2004) ("fail[ure] to report" additional information favorable to plaintiff does not defeat privilege).

In fact, even outside of the fair report context, a libel plaintiff's argument that an article is defamatory because it omitted various facts favorable to the plaintiff "fails in deference to the Defendants' editorial discretion in what to publish. . . . The law of defamation is concerned with whether a publisher reports a story truthfully, not generously."  *Turner v. Wells*, 879 F3d 1254, 1270 (11th Cir.  2018) (citing *Perk v. Reader's Digest Ass'n*, 931 F.2d 408, 412 (6th Cir. 1991) ("[Publishers] have no legal obligation to present a balanced view of what led up to [the publicized event].")); *Janklow v. Newsweek, Inc.*, 759 F.2d 644, 648 (8th Cir. 1985) (concluding

2

Mr. Cockrell
October 11, 2018
Page 3

that Newsweek was not liable for omission of additional facts where the omission did not make
what was published untrue).")

Thus, while it is clear that your clients wished that BuzzFeed wholeheartedly affirmed their
conclusion that Ms. Rondini was not raped, because BuzzFeed accurately and fairly reported on
the Rondini Investigation that led to your clients' conclusion, the Articles are privileged and not
actionable.

## II.     THE SPECIFIC CLAIMS ARE ALSO NOT ACTIONABLE

With this backdrop in mind, it is clear there is no liability as to your clients' specific issues with
the Articles.

First, your clients claim the Article is actionable simply because it omitted facts that would
support your clients' position in the Rondini Investigation.  As noted above, this is wrong as a
matter of law.  *See also Machleder v. Diaz*, 801 F.2d 46, 55 (2d Cir. 1986), *cert. denied*, 479
U.S. 1088 (1987) ("A court cannot substitute its judgment for that of the press by requiring the
press to present an article or broadcast in what the court believes is a balanced manner. It may
only assess liability when the press so oversteps its editorial freedom that it contains falsity and
does so with the requisite degree of fault.")*.*  BuzzFeed, not your clients, has the constitutional
right to decide what information to include in its Articles.  But, more fundamentally, as detailed
here, BuzzFeed did not, in fact, omit these alleged "omissions" from the Articles:

- "Stating that Investigators Jones and Hastings started building a case against Ms. Rondini
  and intentionally implying that there was no criminal case against her" because "[t]he full
  interview shows that Investigator Jones began questioning Ms. Rondini about the stolen
  money and gun only after Ms. Rondini admitted to taking the money and gun."
    - But the Article does make it clear that Ms. Rondini "told investigators" that she
      "grabbed $3 in case she had to take a cab and the gun 'for safety,'" before
      Investigator Jones read Ms. Rondini her "Miranda rights" and started "asking her
      why she took Bunn's gun."

- "Ignoring the actual video of Ms. Rondini leaving and entering her apartment," the night
  she claimed she was raped, where she did not appear to be "blacked out."
    - The Article specifically quotes Capt. Hood's argument that Ms. Rondini's claim
      that she blacked out was undercut by her admission "to being coherent" that
      evening.

- "Ignoring the fact that Investigators Jones and Hastings had to consider the fact that Ms.
  Rondini was physically and mentally able to climb in and out of a two-story window at
  Bunn's house without impaling herself on a wrought iron fence located just to the right of
  the ledge where she jumped off."

Mr. Cockrell
October 11, 2018
Page 4

- o  Again, the Article specifically states that Ms. Rondini left Bunn's "mansion by climbing out of his second-story window" where she then "jumped onto a gate and then to the dark, unfamiliar street below."

- "Ignoring the physical and mental capacity of Ms. Rondini to pull a cooler and trashcan over to the second story roof ledge, climb back onto the second story roof ledge, and enter back into Bunn's bedroom."
  - o  Yet again, the Article specifically states that after Ms. Rondini leapt out of the second-story window she "climb[ed] back into Bunn's room and then out again" to get her keys.

- "Implying that Investigators Jones and Hastings engaged in misconduct when classifying the case as a 'special inquiry.'  A special inquiry merely classifies reported incidents that do not meet the elements of a crime or reported incidents that need more facts, evidence, or investigation in order to rise to the proper level necessary to charge an individual with the alleged crime."
  - o  The Article specifically quotes Capt. Hood's definition of a special inquiry, noting that they include cases where "the investigators don't think the complaint meets the criteria to be a criminal charge under state law", but that they "are investigated just as seriously as sexual assaults."  Additionally, this statement is not actionable because the Article is clear that the decision to classify the case as a "special inquiry" was done before Ms. Rondini "went to the station for a follow-up interview" with Investigator Jones.  For this reason, the statement is not "of and concerning" your clients, which is a requirement of any libel claim.  *New York Times Co. v. Sullivan*, 376 US 254, 291 (1964) (statement about particular police action was not "of and concerning" police supervisor).

- "Omitting other evidence, such as Ms. Rondini's admission that she never feared for her life or did not physically fight or resist Mr. Bunn."
  - o  The Article is clear that Ms. Rondini's claim that she was raped was not premised on a physical threat.  Rather, Ms. Rondini said she felt trapped in Mr. Bunn's house and "felt like just letting him have sex with me was the only way he would let me go."  The Article also includes Investigator Jones' perspective that Ms. Rondini did not adequately resist Mr. Bunn because she "never kicked him or hit him or tried to resist him."  May I also add, Ms. Rondini alleges that she told Mr. Bunn that she did not want to have sex with him and only did so, against her will, because she needed to get out of his house.  To this day, it appears that your clients do not find her lack of consent to having sex with Mr. Bunn to be troubling.  We disagree.

- "Omitting the fact that neither Investigator Jones nor Hastings was responsible for drawing blood or taking a urine sample from Ms. Rondini for forensic testing, when the hospital performed a basic rape kit."

4

Mr. Cockrell
October 11, 2018
Page 5

> o The Article notes that it is "unclear if the <u>hospital</u> even collected the blood and urine samples necessary for forensic testing when it performed a basic rape kit on Megan," which makes it clear it was the hospital's duty to collect these samples. (emphasis added). The Article does not state if Investigators Jones and Hastings were responsible for any further testing, although it is undisputed that they never tested – or recommended that – Megan's blood or urine to be tested even after she admitted to having large memory lapses the night of the alleged rape.

Next, you claim that BuzzFeed omitted various pieces of evidence that were not actually a part of the Rondini Investigation. For example, you claim BuzzFeed ignored Ms. Rondini's Snapchat videos and text messages or "handwritten" notes that your clients believe show Ms. Rondini may have wanted to have sex with Mr. Bunn. But, as noted above, these were not a part of the witness interviews or Felony Packet that supported your clients' belief that no sexual assault occurred, so they were not a part of the BuzzFeed articles that reported on the Rondini Investigation. Incidentally, these messages and notes were also not cited by your clients or Capt. Hood in response to BuzzFeed's detailed questions before publication. And, notably, they do not alter the possibility that Ms. Rondini was, in fact, raped by Mr. Bunn. As your clients seem to not understand, it is entirely possible that Ms. Rondini willingly went to Mr. Bunn's house to look at his animal collection, and maybe even considered having sex with him, and *still* did not consent to have sex with him when the time came.

Next, some of your clients' complaints amount to an objection with BuzzFeed's constitutionally protected opinions. As you may know, "false or not, libelous or not," expressions of opinion "are constitutionally protected and may not be the subject of private damage actions." *Steinhilber v. Alphonse*, 68 N.Y.2d 283, 286 (1986). *See also Turner*, 879 F.3d at 1262 ("statements that are not readily capable of being proven false, and statements of pure opinion are protected from defamation actions by the First Amendment"); *Adelson v. Harris,* 774 F.3d 803, 807 ("where, as here, the grounds of the opinion expressed by the speaker are fully disclosed, the opinion itself is normally held not to be actionable"). Your client complains that the Article states that Investigator Jones "quickly decided that Megan Rondini had not fought back against T.J. Bunn." It is not disputed that Ms. Rondini told her side of the story in just twenty-one minutes. And, in under two hours of questioning, Investigator Jones turned from questioning Ms. Rondini about the alleged rape to focusing on her alleged theft of three dollars and a pistol and telling her that, looking at it from his side, she "never kicked [Bunn] or hit him or tried to resist him." While you may not find this to be "quick," that is BuzzFeed's constitutionally protected opinion. *See Turner*, 879 F.3d at 1264 ("Defendants' subjective assessment of [plaintiff's] conduct is protected opinion).

Finally, you claim that the Article somehow implies that "there was something" sinister about Jones' "abruptly" leaving the room when Ms. Rondini admitted to leaving Mr. Bunn's gun at his property or Jones "asking about Ms. Rondini's full behavior the night of the incident", or "Investigator Hastings's interview with Bunn." Because the Article does not actually state that your clients' actions were "sinister," "not only must" your clients establish that the statement is susceptible of a defamatory meaning which the defendants knew to be false or which the

5

Mr. Cockrell
October 11, 2018
Page 6

defendants published with reckless disregard for its potential falsity, but also that the defendants *intended* to imply or were reckless toward the implications." *Finebaum v Coulter*, 854 So 2d 1120, 1124-25 (Ala. 2003) (emphasis added). While it is clear that BuzzFeed questioned the necessity of these actions, BuzzFeed never stated or implied that these actions were "sinister."

If all of this were not enough, your clients' claims are meritless because they are unquestionably public officials, *see, Gary v Crouch*, 923 So. 2d 1130, 1135 (Ala. Civ. App. 2005)*,* who must, but cannot, establish that BuzzFeed acted with constitutional malice, *i.e.* a subjective awareness that the statements at issue were probably false. To the contrary, the Article is the culmination of months of detailed research into the Rondini Investigation. BuzzFeed reached out to your clients and to Capt. Hood before the publication of the Articles and incorporated Capt. Hood's comments to ensure that the Article included the perspective of the law enforcement officers responsible for the Rondini Investigation. The authors of the Articles did not – and do not – believe the Articles are in any way false. Thus, any libel claim will fail for this additional reason.

While it is clear that your clients do not appreciate the national attention that has been drawn to the Rondini Investigation and their conclusion that Ms. Rondini was not raped, BuzzFeed has every right to report on the investigation that led them to that conclusion. For all the reasons stated above, we decline your demands to retract the Article or the Follow-Up Report. We further caution you against taking legal action that would clearly be futile, and reserve our right to seek fees and costs should your client choose to follow through with these meritless claims. Please feel free to contact me with any additional concerns you may have.

Sincerely,

Rachel Strom

4847-6928-0631v.1 0100812-000012