# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ALABAMA

---

ADAM JONES, *et al.*,

        Plaintiffs,

   - against -

BUZZFEED, INC., *et al.*,

        Defendants.

---

ORAL ARGUMENT REQUESTED

7:19-CV-00403-RDP

## MOVANTS' REPLY SUBMISSION IN RESPONSE
## TO EXHIBIT B OF THE COURT'S ORDER

### REPLY BRIEF IN FURTHER SUPPORT OF DEFENDANTS' OPPOSED MOTION TO STRIKE THE EXPERT REPORTS AND PRECLUDE EXPERT TESTIMONY OF DR. EMILIE L. LUCCHESI

| | |
|---|---|
| **LIGHTFOOT, FRANKLIN & WHITE, LLC** | **DAVIS WRIGHT TREMAINE LLP** |
| J. Banks Sewell, III | Katherine M. Bolger (*pro hac vice*) |
| John G. Thompson | Rachel F. Strom (*pro hac vice*) |
| Jonathan R. Little, III | John M. Browning (*pro hac vice*) |
| | |
| 400 20th Street North | 1251 Avenue of the Americas, 21st Fl. |
| Birmingham, AL 35203-3200 | New York, NY 10020-1104 |
| (205) 581-0772 Phone | (212) 489-8230 Phone |
| (205) 380-9172 Fax | (212) 489-8340 Fax |

*Attorneys for Defendants*
*BuzzFeed, Inc., Katie J.M. Baker, and Ben Smith*

## **TABLE OF CONTENTS**

        **Page**

PRELIMINARY STATEMENT ................................................................................................. 1

ARGUMENT .................................................................................................................................. 1

    A.    Dr. Lucchesi's Testimony About the Meaning of the Article Will Not Assist the Court or the Trier of Fact ....................................................................... 1

    B.    Dr. Lucchesi's Testimony About Defendants' Intent Will Not Assist the Court or Trier of Fact Determine Actual Malice or Any Other Issue ...................... 4

    C.    Plaintiffs Fail to Demonstrate the Reliability of Dr. Lucchesi's Framing Analysis ........................................................................................................................ 9

CONCLUSION .............................................................................................................................. 10

# TABLE OF AUTHORITIES

Page(s)

**Federal Cases**

*Allison v. McGhan Med. Corp.*,
 184 F.3d 1300 (11th Cir. 1999) ................................................................................................9

*Berisha v. Lawson*,
 2021 WL 2742816 (U.S. July 2, 2021) .....................................................................................5

*Cibenko v. Worth Publishers, Inc.*,
 510 F. Supp. 761 (D.N.J. 1981) ................................................................................................5

*D'Allesandro v. City of Albany*,
 2007 U.S. Dist. LEXIS 108338 (N.D.N.Y. July 3, 2007) .........................................................5

*Gray v. Udevitz*,
 656 F.2d 588 (10th Cir. 1981) ..................................................................................................6

*McKinley v. Baden*,
 777 F.2d 1017 (5th Cir. 1985) ..................................................................................................6

*Medina v. City of Hialeah*,
 2003 U.S. Dist. LEXIS 4890 (S.D. Fla. Mar. 19, 2003) ...........................................................5

*Moore v. Cecil*,
 2021 WL 1208870 (N.D. Ala. Mar. 31, 2021) .........................................................................6

*N.Y. Times v. Sullivan*,
 376 U.S. 254 (1964) ............................................................................................................4, 5

*Palin v. N.Y. Times Co.*,
 482 F. Supp. 3d 208 (S.D.N.Y. 2020) ......................................................................................6

*Shelton v. Bauer Publ'g Co.*,
 2016 WL1574025 (C.D. Cal. Apr. 18, 2016) ...........................................................................3

*Siting v. Or. State Bd. of Higher Educ.*,
 927 F. Supp. 2d 1069 (D. Ore. 2013) .......................................................................................7

*St. Amant Smith v. Thompson*,
 390 U.S. 727 (1968) .................................................................................................................5

*Tilton v. Capital Cities/ABC*,
 938 F. Supp. 751 (N.D. Okla. 1995) ....................................................................................3, 4

*Time Inc. v. Pape*,
  401 U.S. 279 (1971) ...................................................................................................5

*World Boxing v. Cosell*,
  715 F. Supp. 1259 (S.D.N.Y. 1989) ........................................................................3, 4

**State Cases**

*Boone v. Sunbelt Newspapers, Inc.*,
  556 S.E.2d 732 (Ct. App. S.C. 2001) .......................................................................6

*Brady v. Ottaway Newspapers, Inc.*,
  84 A.D.2d 226 (N.Y. 2d Dep't 1981) .......................................................................5

*Brown v. W.R.M.A. Broad. Co.*,
  238 So. 2d 540 (Ala. 1970) .......................................................................................5

*Coursey v. Greater Niles Township Pub. Corp.*,
  239 N.E.2d 837 (Ill. 1968) .........................................................................................6

*De Angelis v. Hill*,
  847 A.2d 1261 (N.J. 2004) .........................................................................................5

*Delia v. Berkey*,
  395 A.2d 1189 (Ct. Special App. Ma. 1978) ...........................................................6

*Dunlap v. Phila. Newspapers, Inc.*,
  448 A.2d 6 (Pa. Sup. Ct. 1982) ..................................................................................6

*Finebaum v. Coulter*,
  854 So. 2d 1120 (Ala. 2003) ......................................................................................6

*Gary v. Crouch*,
  923 So. 2d 1130 (Ala. Civ. App. 2005) ....................................................................5

*Gomes v. Fried*,
  136 Cal. App. 3d 924 (1st Dist. Ct. App. 1982) .....................................................5

*Hirman v. Rogers*,
  257 N.W.2d 563 (Minn. 1977) ..................................................................................6

*Huntsville Times Co.*, 888 So. 2d 492 (Ala. 2004) ..............................................................5

*Jackson v. Filliben*,
  281 A.2d 604 (Del. 1971) ...........................................................................................6

*Jurkowski v. Crawley*,
  637 P.2d 56 (Okla. 1981) ............................................................................................6

*Kidder v. Anderson*,
   354 So. 2d 1306 (La. 1978) ...................................................................................................6

*Malerba v. Newsday, Inc.*,
   64 A.D.2d 623 (2d Dep't 1978) .............................................................................................5

*McCoy v. Hearst Corp.*,
   727 P.2d 711 (Cal. 1986) .......................................................................................................5

*Mediaone, L.L.C. v. Henderson*,
   592 S.W.3d 933 (Ct. App. Tex. 2019) ...................................................................................5

*Moriarty v. Lippe*,
   294 A.2d 326 (Conn. 1972) ...................................................................................................6

*NAACP v. Moody*,
   350 So. 2d 1365 (Miss. 1977) ................................................................................................6

*Orr v. Lynch*,
   60 A.D.2d 949 (N.Y. 3d Dep't 1978) ....................................................................................5

*Racciotti v. Zinn*,
   550 S.W.2d 217 (Ct. App. Mo. 1977) ...................................................................................6

*Rosales v. City of Eloy*,
   593 P.2d 688 (Ariz. App. Ct. 1979) .......................................................................................6

*Scelfo v. Rutgers Univ.*,
   282 A.2d 445 (N.J. Sup. Ct. 1971) ........................................................................................6

*Tomkiewicz v. Detroit News, Inc.*,
   635 N.W.2d 36 (Ct. App. Mich. 2001) ..................................................................................6

*Wiggins v. Mallard*,
   905 So. 2d 776 (Ala. 2004) ....................................................................................................6

**PRELIMINARY STATEMENT**

In their opposition brief ("Opposition" or "Opp."), Plaintiffs make two principle concessions that should resolve this Motion without more.[1]  First, Plaintiffs concede that they "do not intend to offer the opinions or testimony of Dr. Lucchesi concerning the falsity of the BuzzFeed Article" (*id*. at 21 n.13).  And Plaintiffs then concede, as they must, that "testifying experts may not offer legal conclusions."  Opp. 17 (quoting *Hibbett Patient Care, LLC v. Pharmacists Mut. Ins. Co.*, 2017 WL 2062955, at *2 (S.D. Ala. May 12, 2017)).  Since Dr. Lucchesi's only remaining opinions are legal conclusions about the Article's defamatory meaning and supposed proof of actual malice (*see* Mot. 10-11, 14-15), there is nothing left.

Nonetheless, Plaintiffs persist, insisting that Dr. Lucchesi is qualified and somehow should be permitted to give testimony about framing and stigma communication in the Article.  Opp. 2.  But Plaintiffs do not rebut – or even acknowledge – the many judicial decisions categorically barring experts from testifying about linguistic concepts like framing in defamation cases.  *See* Mot. 10-17.  And they have failed to identify a single decision permitting expert testimony about the meaning of an article or allowing an expert to establish a publisher's subjective intent through objective analysis of the publication at issue.  Simply put, the law is clear that testimony from an expert linguist is categorically inadmissible for the purpose of proving actual malice or defamatory meaning.

**ARGUMENT**

A.   **Dr. Lucchesi Has Withdrawn Her Testimony Regarding Falsity**

Dr. Lucchesi testified with great confidence that framing analysis demonstrates that "the [A]rticle is false." Dep. Tr. 61:1-3. But Plaintiffs now concede that they "do not intend to offer

---

[1] Capitalized and abbreviated terms shall have the same meaning as in Defendants' Opposed Motion to Strike the Expert Report and Preclude Expert Testimony of Dr. Emilie Lucchesi.  *See* Doc. 51 (the "Motion" or "Mot.").

1

[her opinions] concerning the falsity of the BuzzFeed Article." Opp. 21 n.13.  Defendants welcome this concession and ask that it be included in the order disposing the Motion.

### B.   Dr. Lucchesi's Testimony Should Be Excluded Because She Purports To Opine On The Ultimate Legal Questions In This Case

Defendants have demonstrated that Dr. Lucchesi's testimony should be excluded because she impermissibly seeks to opine on legal issues in this case – including whether Defendants acted with actual malice and whether the Article is susceptible of certain defamatory meanings. In their Opposition, Plaintiffs concede both that "Dr. Lucchesi's opinions may include some legal conclusions" (Opp. 16) and that "testifying experts may not offer legal conclusions." *Id*. at 17 (quoting *Hibbett Patient LLC*, 2017 WL 2062955, at *2).  While Plaintiffs assert that Dr. Lucchesi should nonetheless be allowed to offer "expert opinions on framing," they fail to explain how that testimony differs from the "legal conclusions" she admittedly "may not offer." *Id*. at 16.  Whether described as an opinion about "framing" or "defamatory meaning" or "intent," Dr. Lucchesi's testimony amounts to the same thing – she is trying to tell this Court how to read the Article and, in doing so, how to decide dispositive legal questions in this case.

Because the <u>only opinions offered by Dr. Lucchesi</u> are legal conclusions, she should be precluded from offering any expert testimony on this ground alone.

### C.   Dr. Lucchesi's Testimony About the Meaning of the Article Is Not Helpful

Next, Dr. Lucchesi's opinions about the meaning of the Article must also be excluded – like all expert opinions on this subject – because defamatory meaning depends on what a "reasonable reader" thinks, not the complicated analysis of an elite academic.  In their Motion, Defendants cited many cases from courts all over the United States excluding linguistic experts for just this reason.  Mot. 15-16.

2

In response, Plaintiffs simply ignore those cases. Instead, they discuss Dr. Lucchesi's expertise at framing analysis at length, insisting that the trier of fact "needs" Dr. Lucchesi's expert testimony in order to "understand how the Defendants can write and manipulate words in a way to affect the meaning of the BuzzFeed Article." Opp. 21. But courts have rejected this very argument time and again because "a layman is perfectly capable of reading [a] book" – or, in this case, a news article written for a general audience – "without the 'help' of a linguistics expert." *World Boxing v. Cosell*, 715 F. Supp. 1259, 1264-65 (S.D.N.Y. 1989). *See also Shelton v. Bauer Publ'g Co.*, 2016 WL1574025, at *10 n.10 (C.D. Cal. Apr. 18, 2016) (holding expert opinion from linguist was not "helpful or necessary in discerning the natural and probable effect upon the mind of the average reader") (citation and internal quotation marks omitted); *Tilton*, 938 F. Supp. at 753 (holding expert testimony on the implied meaning of publication "relates to matters within the common knowledge of an average juror"); Mot. 15 n.12 (citing additional cases).  Simply put, Dr. Lucchesi's expertise in framing is unhelpful as a matter of law.

In fact, Plaintiffs have failed to identify *any* judicial decisions allowing an expert to testify for the purpose of elucidating a publication's defamatory meaning.  And Plaintiffs' Opposition makes clear why that is the case: the framing analysis proposed by Dr. Lucchesi would be actively misleading (in addition to being merely unhelpful).  Plaintiffs assert that Dr. Lucchesi will expose hidden meanings in the Article or – as Plaintiffs put it in a related context – "uncover[] the veil of the language and structure used." Opp. 20.  *See also id*. at 20-21 ("Dr. Lucchesi can inform the trier of fact, through her content analysis[,] as to the effect of priming would have on determining the defamatory meaning of the BuzzFeed Article .…").  But it is Dr. Lucchesi, not Defendants, who is trying to "prime readers to think a certain way" (Opp. 21) and courts have uniformly refused to allow experts to impose their views in this fashion.  The

3

question of whether a publication is defamatory is to be discerned by the "reasonable reader," not by an expert's "virtually incomprehensible pseudo-scientific jargon." *Cosell*, 715 F. Supp. at 1264. This Court should reject the invitation to be the first to allow experts to opine on the subject of defamatory meaning.

### D. Dr. Lucchesi's Testimony About Defendants' Intent Is Unhelpful

This Court should similarly preclude Dr. Lucchesi from testifying about Defendants' intent, whether for the purpose of proving actual malice or anything else. In their Motion, Defendants argued that Dr. Lucchesi should not be permitted to testify about whether Defendants acted with actual malice in publishing the Article because expert testimony does not "assist the jury in performing its task of determining what Defendants state of mind was." *Tilton v. Capital Cities/ABC*, 938 F. Supp. 751, 753 (N.D. Okla. 1995). As with the defamatory meaning argument, Defendants cited several cases reaching this conclusion. Mot. 12. Rather than engage with this legal authority, Plaintiffs attempt an evasive two-step maneuver.

Plaintiffs' first step is to raise spurious questions about whether the actual malice standard applies in this case. *See, e.g.*, Opp. 7 ("Alabama courts … do not appear to have expressly adopted the blanket rule that all law enforcement personnel, regardless of rank and responsibility, are public officials for defamation purposes."); *id*. at 8 ("Instead of applying a blanket rule, trial courts should analyze the public official status [sic] on a case-by-case basis."). But these hypothetical musings are irrelevant because the law could not be clearer. For the avoidance of doubt, in the United States of America, a public official must prove with clear and convincing evidence that defendants acted with actual malice, *i.e.* a subjective awareness of falsity or probably falsity. *See N.Y. Times v. Sullivan*, 376 U.S. 254, 256 (1964). Despite this, Plaintiffs speculate that actual malice might not always apply based on dubious inferences from a handful of decisions that applied the standard without hesitation or questioning it. *See, e.g.*, Opp.

4

8 ("[I]t appears that the Alabama Court of Civil Appeals hinted that it may take an alternate position to the general blanket rule."). And they cite a concurrence by Justice Thomas asking the Supreme Court to revisit whether public figures should ever be required to prove actual malice – although the views expressed in this concurrence are self-evidently not the law. Opp. 12 (citing *McKee v. Cosby*, 139 S. Ct. 675 (2019)). If there were any doubt, *Sullivan*'s status as the law of the land was confirmed once again earlier this month when the Supreme Court denied a petition for certiorari seeking to overturn the actual malice requirement for public figures, over the dissents of Justice Thomas and Justice Gorsuch. *See Berisha v. Lawson*, 2021 WL 2742816 (U.S. July 2, 2021). There is simply no question that the actual malice standard applies to every defamation case involving public officials when their official conduct is at issue.[2]

And despite Plaintiffs' efforts to sow confusion, law enforcement officers are quintessential public officials who are always required to prove actual malice – beginning with the plaintiff in *Sullivan*, who was a commissioner in charge of the Montgomery, Alabama police department. *See N.Y. Times v. Sullivan*, 376 U.S. 254, 256 (1964). Since then, scores of "courts have uniformly held that a patrolman or low-level police officer is a 'public official' for the purpose of the *New York Times* privilege." *Gomes v. Fried*, 136 Cal. App. 3d 924, 933 (1st Dist. Ct. App. 1982).[3] Plaintiffs do not identify a single case holding or seriously suggesting

---

[2] Plaintiffs also claim that "Alabama substantive law will apply in this case." Opp. 5. Defendants take no position on this choice of law issue and will address it, if necessary, in subsequent filings.

[3] *See, e.g, Time Inc. v. Pape*, 401 U.S. 279, 284 (1971); *St. Amant Smith v. Thompson*, 390 U.S. 727, 730 (1968); *Huntsville Times Co.*, 888 So. 2d 492, 497 (Ala. 2004); *Brown v. W.R.M.A. Broad. Co.*, 238 So. 2d 540, 541 (Ala. 1970); *Gary v. Crouch*, 923 So. 2d 1130, 1135 (Ala. Civ. App. 2005); *Mediaone, L.L.C. v. Henderson*, 592 S.W.3d 933, 941 (Ct. App. Tex. 2019); *D'Allesandro v. City of Albany*, 2007 U.S. Dist. LEXIS 108338, at *56-66 (N.D.N.Y. July 3, 2007); *De Angelis v. Hill*, 847 A.2d 1261, 1268 (N.J. 2004); *Brady v. Ottaway Newspapers, Inc.*, 84 A.D.2d 226, 240 n.5 (N.Y. 2d Dep't 1981) ("The matter is well settled in this State, a police officer is a public official" for actual malice purposes.); *Orr v. Lynch*, 60 A.D.2d 949, 950 (N.Y. 3d Dep't 1978); *Malerba v. Newsday, Inc.*, 64 A.D.2d 623, 624 (2d Dep't 1978); *Medina v. City of Hialeah*, 2003 U.S. Dist. LEXIS 4890, at *6 (S.D. Fla. Mar. 19, 2003) ("[A] police officer is deemed a public figure as a matter of law … As such, criticism of him relating to his official conduct is actionable only upon a showing of 'actual malice.'"); *McCoy v. Hearst Corp.*, 727 P.2d 711, 728 (Cal. 1986); *Cibenko v. Worth Publishers, Inc.*, 510 F. Supp. 761, 765 (D.N.J. 1981) ("As a transit police

5

otherwise. To the extent that Plaintiffs are asking this Court to deviate from binding authority, it should decline to do so – as other district courts have done when faced with similar requests.[4]

Plaintiffs' second step is to draw attention away from the many cases holding that expert testimony is not admissible for the purposes of proving actual malice by suggesting that the question of intent may also be relevant to other issues, including common-law malice or defamation by implication. Opp. 18-19.[5] On each count, Plaintiffs suggests that Dr. Lucchesi should be permitted to testify about "the language and structure used in the BuzzFeed Article" because these "may be considerations the trier of fact can use in its determination of intent." Opp. 19. And, Plaintiffs argue, jurors cannot understand Defendants' intent unless Dr. Lucchesi "illuminate[s] the concept of framing and how it was applied in the BuzzFeed Article such that the trier of fact can understand such inferences." *Id*. But this argument fails across the board because intent is never a proper subject for expert testimony – regardless of whether it is intent to

---

officer, Cibenko is a public official."); *Boone v. Sunbelt Newspapers, Inc.*, 556 S.E.2d 732, 737 n.3 (Ct. App. S.C. 2001); *Tomkiewicz v. Detroit News, Inc.*, 635 N.W.2d 36, 43 (Ct. App. Mich. 2001); *McKinley v. Baden*, 777 F.2d 1017, 1021 (5th Cir. 1985); *Dunlap v. Phila. Newspapers, Inc.*, 448 A.2d 6, 15 (Pa. Sup. Ct. 1982); *Gray v. Udevitz*, 656 F.2d 588, 591 (10th Cir. 1981) ("[Plaintiff's] status as a police officer … made him a public official. Street level policemen, as well as high ranking officers, qualify as public officials"); *Jurkowski v. Crawley*, 637 P.2d 56, 58-59 (Okla. 1981); *Rosales v. City of Eloy*, 593 P.2d 688, 689-90 (Ariz. App. Ct. 1979) ("[A] police officer was a 'public official' under the law governing libel."); *Delia v. Berkey*, 395 A.2d 1189, 1192 (Ct. Special App. Ma. 1978); *Kidder v. Anderson*, 354 So. 2d 1306, 1307-08 (La. 1978); *Racciotti v. Zinn*, 550 S.W.2d 217, 225 (Ct. App. Mo. 1977); *Hirman v. Rogers*, 257 N.W.2d 563, 566 (Minn. 1977); *NAACP v. Moody*, 350 So. 2d 1365, 1369 (Miss. 1977); *Moriarty v. Lippe*, 294 A.2d 326, 330-31 (Conn. 1972); *Scelfo v. Rutgers Univ.*, 282 A.2d 445, 449 (N.J. Sup. Ct. 1971) ("[T]wo municipal policemen whose powers are constitutionally and statutorily derived, are 'public officials' and as such fall squarely within the 'actual malice' requirement."); *Jackson v. Filliben*, 281 A.2d 604, 605 (Del. 1971); *Coursey v. Greater Niles Township Pub. Corp.*, 239 N.E.2d 837, 841 (Ill. 1968) ("[T]he plaintiff is within the 'public official' classification. Although as a patrolman he is the lowest in rank of police officials and would have slight voice in setting departmental policies, his duties are peculiarly governmental in character and highly charged with the public interest.").

[4] *See, e.g.*, *Palin v. N.Y. Times Co.,* 482 F. Supp. 3d 208, 214-15 (S.D.N.Y. 2020) (declining request to forego application of the actual malice standard in public figure defamation case); *Moore v. Cecil,* 2021 WL 1208870, at *1 (N.D. Ala. Mar. 31, 2021) (same).

[5] Common-law malice may be relevant in this action if Defendants raise a defense of qualified immunity in lieu of (or in addition to) seeking dismissal for lack of actual because common-law malice – *i.e.*, "a desire and intention to injure" – is required to overcome qualified immunity. *Wiggins v. Mallard*, 905 So. 2d 776, 784 (Ala. 2004). And to the extent that Plaintiffs have raised a claim of defamation by implication, they will be required to show that Defendants "intended to imply or were reckless toward the implications" of the allegedly defamatory publication. *Finebaum v. Coulter*, 854 So. 2d 1120, 1125 (Ala. 2003).

publish a false statement (*i.e.*, actual malice), intent to harm (*i.e.*, common law malice) or intent to convey a certain implication. In all cases, "[c]ourts routinely exclude as impermissible expert testimony as to intent, motive or state of mind." *Siting v. Or. State Bd. of Higher Educ.*, 927 F. Supp. 2d 1069, 1078 (D. Ore. 2013). This is because:

> Expert testimony as to intent, motive, or state of mind offers no more than the drawing of an inference from the facts of the case. The jury is sufficiently capable of drawing its own inferences regarding intent, motive or state of mind from the evidence and permitting expert testimony on this subject would be merely substituting the expert's judgment for the jury's and would not be helpful to the jury.

*Id.* Because any and all expert testimony about Defendants' intent is categorically unhelpful, this Court should preclude Dr. Lucchesi from testifying about Defendants' intent for any purpose in this defamation action – as other courts have done. *See* Mot. 12.

Another fatal flaw in the argument that Dr. Lucchesi should be permitted to testify about Defendants' intent is that she lacks the basic factual foundation needed to offer credible testimony on this subject. Plaintiffs assert that "the concept of framing boils down to the writer and publisher controlling what the reader is exposed to in the way the writer wants the exposure to occur." Opp. 2. But Dr. Lucchesi's framing analysis disregards the evidence most likely to show what Defendants actually intended when they published the Article – *i.e.*, contemporaneous emails, drafts of the Articles and deposition testimony. *See* Dep. Tr. 55:7-20, 84:9-85:23, 143:17-19, 269:3-25.[6] Instead of relying on the most pertinent fact evidence, Dr.

---

[6] The only reference to this body of evidence in Plaintiffs' opposition is a fleeting reference to two documents produced in discovery that Plaintiffs cite as evidence that "[r]eporters, like Katie Baker, understand and use frames." Opp. 20. But these documents are irrelevant because Dr. Lucchesi had never seen them at the time she issued her Report. Dep. Tr. 55:7-20, 143:17-19, 269:3-25. Even if these documents were relevant, they do not remotely suggest that Defendants practiced (or were even aware of) the academic discipline of framing because they are routine communications that refer colloquially to issues relating to the "framing" or "angle" of an article. As Dr. Lucchesi testified at her deposition, journalists are generally unaware of academic framing concepts. *See, e.g.*, Dep. Tr. 82:11-14 ("Q: Is it the case that people sit around in newsrooms and talk about frames? A: They won't – no. They won't be able to name, I'm using this – the institutional frame."). Since there is no evidence for Plaintiffs'

7

Lucchesi promises to "uncover[] the veil of the language and structure [of the Article] in order to illuminate facts concerning the actual intent, or at least the recklessness, of Defendants" – or (in plain English) she intends to opine that Defendants had bad intent based on nothing more than her framing analysis of the Article. But this is not a legitimate factual basis for providing an opinion about what Defendants actually thought. *See* Mot. 13.

Finally, Plaintiffs suggest that Dr. Lucchesi should be permitted to testify about "journalistic standards" because "journalistic standards may assist the trier of fact in determining whether the Defendants had an intent to avoid the truth" (Opp. 19-20), but this argument falls apart for a number of reasons. First and foremost, Dr. Lucchesi's testimony about what she believes Defendants should have done is not relevant to actual malice – the controlling standard in this case – because actual malice "requires more than a departure from reasonably prudent conduct." Mot. 11. Moreover, Plaintiffs fail to identify a single decision permitting an expert to testify for the purpose of demonstrating that failure to abide by journalistic standards constitutes of actual malice. Opp. 19-20. Even assuming *arguendo* that specific failures to abide by journalistic standards might have a limited bearing on actual malice in some cases, Dr. Lucchesi's expert testimony should still be excluded because her opinion focuses on academic "framing" and "stigma" analysis – but does not specify what "journalistic standards" Defendants were required to follow. For instance, she asserts that "[t]he investigators' names should never have been included in this piece," but fails to identify any generally accepted journalistic standard that would prohibit journalists from naming the officers responsible for conducting controversial police investigations. *See* Report 29. This is presumably because there is no such

---

contention that Defendants consciously used framing techniques, there is no basis for their claim that "the trier of fact should be educated on this concept as well." Opp. 20.

8

rule.[7] For all these reasons, Dr. Lucchesi's testimony about Defendants' intent is unhelpful and should be precluded.

### E. Plaintiffs Fail to Demonstrate the Reliability of Dr. Lucchesi's Opinion

Dr. Lucchesi's expert testimony must also be excluded because framing analysis is not sufficiently reliable, for all the obvious reasons Defendants identified in their moving papers. *See* Mot. 19-22. In response, Plaintiffs attempt to shoehorn Dr. Lucchesi's opinion into four factors traditionally associated with expert testimony, specifically:

> (1) whether the expert's methodology can be tested; (2) whether the expert's scientific technique has been subjected to peer review and publication; (3) whether the method has a known rate of error; [and] (4) whether the technique is generally accepted by the scientific community.

Opp. 14 (quoting *Rink v. Cheminova, Inc.*, 400 F.3d 1286, 1292 (11th Cir. 2005)). But Plaintiffs' application of each of these factors merely underscores the many reasons why framing analysis is not sufficiently reliable to be admitted as expert testimony.

For instance, Plaintiffs suggest that "the method employed by Dr. Lucchesi has a known rate of error (*i.e.*, subjectivism is inevitable)." Opp. 15. "Inevitably subjective" is not a meaningful rate of error for a scientific method; it is an admission that framing analysis is inherently unreliable. No court would accept "subjectivism is inevitable" as the error rate for legitimate expert testimony on subjects like medical reports or DNA testing, and this Court should not accept it for Dr. Lucchesi's framing analysis. *See, e.g.*, *Allison v. McGhan Med. Corp.*, 184 F.3d 1300, 1321 (11th Cir. 1999) (excluding expert testimony with "a high potential

---

[7] At her deposition, Dr. Lucchesi made a number of other claims about journalistic standards that were sourced to her status as "an elite journalist," but which are clearly not consistent with mainstream practice. *See, e.g.*, Dep. Tr. 121:18-124:23 (testifying that it is impermissible to attribute information to "friends" or "family"); *id*. at 205:17-207:11 (testifying that journalists "always have to do an institutionally driven article if there is an institutionally driven problem" in which blame is attributed); *id*. at 265:18-268:20 (testifying that journalists should privilege one contested viewpoint over another after the individuals involved are dead).

9

rate of error"). Next, Plaintiffs make an *ipse dixit* assertion that "Dr. Lucchesi's technique is generally accepted," but do not cite any authority for this proposition. Opp. 15. This is unsurprising given that it is highly unlikely that there is any academic consensus – let along general acceptance – that framing analysis of a news article can reliably determine its meaning or prove whether the article was published with reckless disregard for the truth. Plaintiffs also suggest that Dr. Lucchesi's methodology can be tested but do not even attempt to explain how this could be done. *Id*. Again, this is not surprising. Framing is so inherently subjective and malleable that it is not hard to imagine how any "test" of Dr. Lucchesi's interpretation of the Article, using the same "methods," could produce the exact opposite result. Allowing academics like Dr. Lucchesi to testify in defamation cases would lead to a battle of literary experts – with each expert lecturing the jury about obscure scholarly concepts in order to advance their self-serving interpretation of the work in suit. The only purpose that these sorts of expensive sideshows would serve is to complicate and confuse straightforward issues.

The only factor that even arguably supports the acceptance of Dr. Lucchesi's testimony is that framing analysis has been peer reviewed, at least according to Dr. Lucchesi. But the fact that framing has found some acceptance in academic circles does not mean that it is suitable for use in litigation, which is amply reflected by the fact that no court has permitted experts to testify about esoteric linguistic concepts in a defamation case. This Court should not be the first.

## CONCLUSION

Based on the foregoing, Defendants respectfully request that this Court grant their Motion and exclude the expert testimony and opinions of Dr. Lucchesi.

**DAVIS WRIGHT TREMAINE LLP**

By: _/s/ Katherine M. Bolger_
    Katherine M. Bolger (*pro hac vice*)
    Rachel F. Strom (*pro hac vice*)
    John M. Browning (*pro hac vice*)

1251 Avenue of the Americas, 21st Fl.
New York, NY  10020-1104
T: (212) 489-8230
F: (212) 489-8340

**LIGHTFOOT, FRANKLIN & WHITE, LLC**

J. Banks Sewell, III
John G. Thompson
Jonathan R. Little, III

400 20th Street North
Birmingham, AL 35203-3200
T: (205) 581-0772
F: (205) 380-9172

*Attorneys for Defendants*
*BuzzFeed, Inc., Katie J.M. Baker, and Ben Smith*