Case 7:19-cv-00403-RDP  Document 63-44  Filed 09/15/21  Page 1 of 5

FILED
2021 Sep-15 PM 04:06
U.S. DISTRICT COURT
N.D. OF ALABAMA

# EXHIBIT 44

Message

**From:** Katie Baker [katie.baker@buzzfeed.com]
on behalf of   Katie Baker <katie.baker@buzzfeed.com> [katie.baker@buzzfeed.com]
**Sent:** 6/8/2017 9:02:58 PM

Katie,

Thank you for giving me a chance to respond. I did see you have been given some inaccurate information and believe you have not been given all of the information concerning this case. So I hope this answers some of your questions.

Re Background:

- For clarification, we do not turn over cases to the prosecutors who decide whether to seek a formal indictment. The information you have is inaccurate. If a victim wishes to proceed with the case although the investigators believe there is not enough evidence for an arrest, then the victim can always request presenting their case to the magistrate. The magistrate, who is not a prosecutor, determines if enough evidence exists for an arrest and gives us their determination. Then, if the victim is not satisfied with the determination of the magistrate and wishes to go further, we will present the case to the Grand Jury as we did in this case. Rondini's case as the victim of a sexual assault was presented to the Grand Jury which was no billed on March 11, 2016. You are incorrect when you state the prosecutors decide whether to seek a formal indictment by taking a case to Grand Jury. The Grand Jury makes the decision on whether the case needs more investigation or is no billed, as was the case in this investigation.

- I can also confirm that our investigators routinely receive sexual assault investigations training. They are sent to conferences and training classes as they become available.

Re Statistics:

- I believe our unit's statistics for sexual assault arrests is well above the National Average. Nationally the percentage of arrests is low for sexual assault cases. This is due to many reasons and here especially because of the number of alcohol facilitated sexual assault cases that are reported. Investigating and prosecuting alcohol related sexual assaults is very difficult. There are many articles and publications regarding this and I recommend you read, *Prosecuting Alcohol-Facilitated Sexual Assault (2007),* which was written by the American Prosecutors Research Institute in conjunction with the National District Attorneys Association and supported by the Violence Against Women, Office of Justice Programs in the United States Department of

CONFIDENTIAL

Justice. Our investigators and prosecutors meet regularly to discuss these cases due to the elements that require successful prosecution of these types of cases. The numbers presented do not paint an accurate picture of how the cases are cleared. For example, in 2015 of those cases there were 19 arrests, 14 were presented to the Grand Jury, 49 in which the victim refused to prosecute or follow up on the case, 16 in which the case was closed as unfounded, 13 which are pending or inactive, and the remainder closed are prosecution declined or administratively cleared.  According to 2015 FBI UCR statistics, the nationwide percentage for Rape arrests was 10.6%.  In 2015, our unit's percentage for Rape arrests was slightly over 35%.

- It is our standard procedure to investigate all sexual assault investigations as valid unless evidence proves otherwise. During an investigation, sometimes evidence is found early which would preclude a criminal offense. A majority of the time, this initial evidence comes from the victim's first statements given to patrol officers while making the report. We receive approximately 40-50% of our sexual assault investigations listed as "Special Inquiry" reports. Reports listed as special inquiry, which fall within the sexual assault category, are usually cases where the victim does not know what or if anything happened or the reporting officer does not feel the complaint meets the criteria to be a criminal charge under the Alabama State Code. A special inquiry report is often generated so the incident will be sent to investigations to be investigated instead of no report written by the responding patrol officer. Special inquiry reports are written for other things than sexual assault. Some examples are;

    - A person wakes up from a night of drinks to find a cut on his arm. Should this be listed as an assault or did he cut his arm stumbling into his residence?

    - Someone notices a piece of jewelry missing from his or her residence with no sign of forced entry. Should this be theft or did a family member wear the jewelry without seeking permission first?

In both of these cases, a special inquiry report was completed and both will be investigated to determine if a crime has been committed. Because of the seriousness of a sexual assault allegation, patrol officers are trained to write a report even though the elements of a crime have not yet been met; often listing it as special inquiry. Two examples of this are;

    - A female wakes up at a friend's house after a night of drinks. She doesn't know if she was sexually assaulted but she files a report just to make sure.

    - A person wakes and finds their underwear missing after a night drinking and has a sore pelvic area. This person did not remember what happened during the night because of the amount of alcohol consumed. The person had scrapes on their knees and hands. A report was generated but with limited information, it does not meet the state code for a sexual assault.

Both of the examples listed were categorized as sexual assaults and fully investigated. In

both cases, Investigators were quickly able to determine neither person was sexually

assaulted by video footage and witness statements. However, both cases are listed on our statistical data as a sexual assault even though neither were nothing more than over indulgence in alcohol.

- Correct not all "Special Inquiries" would be classified as felonies.

- Again, many people elect not to pursue cases for many reasons. I know for instance in many cases people are mad at someone initially, then change their mind. Sometimes the victim's memory returns days later and they tell us they are aware that nothing happened and they wish to drop the case. I'm sure there are other reasons as well.

Re: Megan Rondini

- Although a victim "believes" they were victimized, does not automatically mean that an arrest can be made from their allegation. Such was the case in the Rondini case. Her initial statements did not meet the criminal elements of a rape, so it was not reported as such. Although we investigated as a sexual assault to make that determination.

- Rondini's lack of earnest resistance in this case was a factor in the investigation. Rondini admitted to being coherent and never told the suspect "No". She said she was never threatened by the suspect either. She never yelled for help, never called 911 or made any statement or took any action that would clearly reflect that she was not a willing participant in the sexual act. Further, after she said she was sexually assaulted, she left the residence, then returned by climbing back into a second story window to get into the same bedroom with the suspect where she claimed she was sexually assaulted. For these reasons, no arrest was immediately made and may have been factors as to why the Grand Jury no billed her case. Recommendations by the IACP are only broad general recommendations and that is all. They do not cover every type of sexual assault investigation case. Every case is different and especially in this case, she admitted to committing two felonies during her interview and possibly another one. Legally we were obligated to investigate this as well. Thus, she was given Miranda since she could have incriminated herself further. Legally we had to do that. Although she did not "realize" she committed a crime does not negate the fact that she "did" commit the crimes and bound us by our legal requirements to investigate them. However, it did not stop our office from continuing to investigate her claim of being sexually assaulted.

- Yes, it is standard procedure for us to stay in contact with the Title IX coordinator and keep them informed on the case. We are required to do that.

- We did not ask for them to draw blood or urine because Rondini was conscious and did not make any claim that she was drugged, passed out or or forced to drink alcohol. She admitted to drinking alcohol on her

own free will. If circumstances dictate blood or urine is needed for a case, then we request that from the hospital.


- In August 2015 Megan Rondini advised that she didn't want to prosecute when she came to our office. She said they were "going a different route". She told the investigator she was going to file a civil lawsuit against the suspect in her case. It is apparent that she did not relay all of the information she told the investigators in this case to her family. But due to the allegations made in this case from both victims, we elected to proceed with presenting the case to the Grand Jury and letting them make a decision on whether any criminal charges should be filed.

Re: TJ Bunn

- Bunn gave a recorded audio statement on July 2, 2015 to another investigator at the scene in which he gave detailed statement concerning the incident. Investigator Hastings had never met or spoken with Bunn prior to this incident. Investigator Hasting's interview of Bunn was Bunn's second interview. He confirmed his initial statement and did not change his statement. When referring to "waiting to see how far she's going to push this" related to whether Bunn was going to pursue his charges against her.

CONFIDENTIAL

Buzzfeed01659